[Filed May 17, 1886.]

## HANNAH FRENCH *v.* P. C. CRESSWELL AND P. C. THOMPSON.

VERDICT.—Where, in an action of trespass against two defendants, the jury returned a verdict in which a line had been drawn across the name of one of the defendants, where it occurred in the title of the cause, and the verdict read: "We, the jury, find a verdict for the plaintiff herein, the sum of $16.75," such verdict is good against the other defendant.

TRESPASS BY CATTLE—COMMON LAW—FENCES.—In the absence of a statute changing the common-law rule, a party is not obliged to fence his lands before he can maintain an action of damages for trespass by cattle thereon.

SAME—LOCAL STATUTE—UMATILLA COUNTY.—Though a local law requires the owner of lands in Umatilla County to fence against certain specified kinds of stock, such law does not apply to sheep, which are not enumerated therein.

SAME—TITLE—HOMESTEAD AND TIMBER-CULTURE ACTS—EXTENT OF POSSESSION.—The title and possession which a settler obtains to lands upon a declaratory statement filed in the land-office of the United States under the homestead and timber-culture acts are sufficient to enable him to maintain trespass for an injury thereto. And such possession is coextensive with the boundaries of his claim.

TORT—MASTER AND SERVANT—RESPONDEAT SUPERIOR.—A master is liable for the acts of his servant done within the scope of his authority, although the servant disobeyed instructions. The master is shielded from responsibility only when the servant steps outside his general duty, and does an act to subserve his own interest or gratify his passions.

MORROW COUNTY. Defendant Cresswell appeals. Affirmed.

*J. J. Balleray,* for Appellant Cresswell.

A complaint must set forth an inclosure, built in substantial compliance with this law, or there can be no trespass of cattle. (*Campbell* v. *Bridwell,* 5 Or. 311.) Before proof of compliance with the requirements of the laws of the United States, and the issuing of the final certificate, one who has filed a declaratory statement is a mere squatter, and is in possession of just so much

land as he or she has actually reduced to possession and segregated from the body of public lands by inclosure or actual, visible, and notorious boundaries and monuments. (*Rogers* v. *Cooney*, 7 Nev. 216; *Taylor* v. *Woodward*, 10 Cal. 91.) An employer is not liable for the willful and malicious torts of an employee. (*McManus* v. *Crickett*, 1 East, 106; Story on Agency, 9th ed., secs. 456 et seq.; see also note 1 to that section; *Jackson* v. *Second Av. R. R. Co.*, 47 N. Y. 274; *Isaacs* v. *Third Av. R. R. Co.*, Id. 122.)

*L. B. Cox*, for Respondent.

A complaint alleging that the plaintiff was in possession of and entitled to the possession of the premises described is sufficient to support the action, the gist being injury to the possession. (*Rogers* v. *Cooney*, 7 Nev. 213; *Gunsolus* v. *Lormer*, 54 Wis. 630.) Any language which imports an unlawful entry will be sufficient. (*Griffin* v. *Gilbert*, 28 Conn. 493.) *Campbell* v. *Bridwell*, 5 Or. 311, was put upon the general fence law of 1870, applying to the county from which the appeal was taken, and was held to have repealed the common-law rule. In this case, however, there is no legislation in point. The fence law governing Umatilla County is contained in the session laws for 1872, pages 123–126, as amended by the session laws for 1874, pages 65 and 66, in which sheep are not mentioned. There is a difference in the rule applicable to stock roaming at large and sheep which are close-herded. (*Willard* v. *Mathesus*, 1 West Coast Rep. 355 (Col.). The filings of a settler upon the land are in themselves sufficient to draw the possession to the plaintiff as against one claiming no better right, and constructive possession is sufficient to maintain the action. (*Terpenning* v. *Gallup*, 8 Iowa, 74.) But the evidence given was sufficient to establish *actual* possession. (*Woods* v. *Banks*,

14 N. H. 101; *Machin* v. *Geortner*, 14 Wend. 239.)   The instruction given the jury, that " the act of the servant is the act of the master, and he is responsible therefor, though he directed the servant otherwise; and in this case, if the herders did so herd on the lands of the plaintiff after notice to defendants not to herd there, the defendants are responsible, though they ordered otherwise " —is rather broad, but as qualified by the last clause, and thus made applicable to the case at bar, it is not objectionable. (Wharton on Agency, sec. 481; Story on Agency, sec. 452; *McKenzie* v. *McLeod,* 10 Bing. 385; *Rounds* v. *D. L. & W. R. R. Co.*, 64 N. Y. 129; 2 Thompson on Negligence, pp. 886, 889; Cooley on Torts, pp. 535, 539.)   The objection to the verdict comes too late by motion for a new trial.   The defendants, by their counsel, were present in court when the verdict was returned, and if they wished to except to the verdict, they should have done so *at that time.*   (*McGregor* v. *Armill*, 2 Iowa, 30; *Barkow* v. *Sanger*, 47 Wis. 500; *Manny* v. *Griswold*, 21 Minn. 506.)   And an informal verdict is good if it is such a one as the court can understand.   (*Ward* v. *Thompson*, 48 Iowa, 588; *Allard* v. *Lamirande*, 29 Wis. 502.)   Although a verdict may be unwarranted, yet if the controversy be trivial, and the object of the appellant is merely costs, and to vex the respondent, the judgment should not be reversed.   (*Cady* v. *Fairchild*, 18 Johns. 129; *Stephens* v. *Wider*, 32 N. Y. 351.)

THAYER, J.   The respondent commenced an action against the appellant and one P. C. Thompson, in the Justice's Court for Heppner precinct, then Umatilla County, Oregon.   She alleged in her complaint in said action the following: 1. "That at all the times hereinafter mentioned in this complaint, plaintiff was in possession of and entitled to the possession of the following de-

scribed parcels of real estate, to wit: The south half of
the south-west quarter, north-west quarter of the south-
west quarter of section 9, and the north-east half of the
south-east quarter of section 8, township 3, south of range
28 east.    Also, the west half of the north-west quarter,
the south-east quarter of the north-west quarter, and the
north-east quarter of the south-west quarter of section 8,
township 3, south of range 28 east, of the Willamette me-
ridian, and all situated in the county of Umatilla, and
state of Oregon; 2. That on divers days and times be-
tween the first day of January, 1884, and the date of the.
commencement of this action, the defendants unlawfully
and willfully permitted their band of sheep to be herded,
and unlawfully and willfully did herd the said band of
sheep, upon the above-described parcels of real estate, of
which plaintiff was disturbed in her possession, whereby
plaintiff's grass on said land was trod down and eaten
up, injured, and destroyed; and whereby plaintiff was
prevented from renting said described land and using
the same for her own and lawful purposes, and was
hence subjected to great damage in the sum of fifty dol-
lars; whereupon plaintiff prays judgment for said sum
of fifty dollars and her costs and disbursements."    The
defendants therein filed an answer to the said com-
plaint, in which they specifically denied all the allega-
tions thereof.

The plaintiff in the action recovered a judgment
against the defendants for thirty dollars and costs, from
which judgment the defendants appealed to the Circuit
Court for the county of Umatilla.    After the appeal was
perfected the county of Morrow was created by an act
of the legislative assembly of the state, which included
within its territory said precinct of Heppner, and the
case was transferred to that county and there tried by
jury, who returned a verdict for the plaintiff for $16.75,

upon which the judgment appealed was entered. The verdict was quite informal. It was entitled as follows: "In the Circuit Court of the state of Oregon, for Morrow County," with the full names of the parties, plaintiff and defendants, but a line was drawn across the name of P. C. Thompson, and it read: "We, the jury, find a verdict for the plaintiff herein, the sum of ($16.75) sixteen 75-100 dollars," signed by the foreman of the jury. The appellant's counsel contends that the verdict was so informal that it was a nullity, but I do not think that the defect was so great as to affect the substantial rights of the appellant. It is apparent that the jury intended to render a verdict against the appellant alone, and I think it was sufficient to authorize the judgment to be entered against him.

The appellant's counsel presented several points upon the argument, upon which he claimed the judgment should be reversed. The first and main point is, that the complaint was defective in not alleging that the respondent's land was fenced, and cited in support of it the case *Campbell* v. *Bridwell*, 5 Or. 311, where it was held that a complaint in trespass by cattle must set forth that the *locus in quo* was inclosed by a fence built in substantial compliance with title 1 of chapter 15, Miscellaneous laws. That decision, it will be observed, was in accordance with the construction which the court placed upon the statute referred to. The court did not, as I understand it, intend to hold that in the absence of the statute a party would be obliged to fence his land before he could maintain an action for damages for trespass by cattle thereon. The common law required the owner of cattle to keep them from going upon the land of another, whether fenced or not; and that would be the rule in this state in the absence of any statute changing it. But the appellant cannot claim the benefit of said statute in

this case, as the act expressly exempted Umatilla County from the effect of its provisions. The legislature passed a local law upon that subject, which included Umatilla County, but it required no fence as against sheep. It only included certain other specified animals. I do not think the point was well taken.

The next point which the appellant's counsel attempted to make was that the court erred in allowing the respondent to testify in regard to the acts of trespass committed upon her claim by the sheep. She had been called as a witness, and had testified to the following: "My name is Hannah French. I am the plaintiff in this action. I settled on the land described in the complaint about October 29, 1883, and filed on it. [Here witness produced a copy of filing on homestead and timber culture, and they were offered and admitted in evidence.] I fenced part, made about eighty rods of fencing, and got the material that fall for the foundation of a house, and had a house built on it, and some seeding done. About February, 1884, I furnished the house with a stove, sewing-machine, table, chairs, cook-stove, and bed and bedding. I settled there, and began residence about the 12th of February, 1884, and continued to reside there, and was residing there in February, 1884." She was then asked this question: "Will you please tell the jury in regard to the acts of trespass committed upon you or your claim?" The question was objected to, on the grounds "that the question, and any answer which said witness might make thereto, and any evidence of trespass was and would be immaterial and irrelevant and incompetent, for the reasons: 1. That the complaint did not state facts sufficient to constitute a cause of action; 2. That no ownership or possession of the land by the plaintiff had been proven." The first ground of the objection has already been considered.

The second one presents a question of fact which was properly left to the jury. The evidence tended to show that the respondent had such a possession of the land as would enable her to maintain trespass. She had settled upon it, and filed a declaratory statement in the land-office that she had taken it under the homestead and timber-culture act, and made improvements thereon, and notified the respondent to keep his sheep off it. Her entry was under claim of right, and her possession was co-extensive with the boundaries of the land claimed. (Angell on Limitations, 5th ed., sec. 400.) This is the rule where one enters under color of title, and I think it applicable to this character of cases.

We have noticed the exceptions taken to the admission of testimony regarding the amount of damages sustained by the respondent in consequence of the sheep feeding upon the land, and agree with the appellant's counsel that many of the questions asked the witness upon that subject were informal; but the verdict was so small that we have concluded that the appellant could not have been materially injured on account of it. If the respondent was entitled to any verdict at all, she was certainly entitled to the amount recovered.

The appellant's counsel strongly contended that the appellant was not liable for the acts of his herder, in allowing the sheep to graze upon the land without his knowledge or consent, and against his express directions; that he was not liable for the willful and malicious torts of his employee; and that the Circuit Court erred in its instructions to the jury upon that point, and particularly in its refusal to instruct as requested by the appellant's counsel. The instructions given to the jury, taken as a whole, were not erroneous. We do not agree with the counsel that the appellant was not liable for his sheep having trespassed upon the respondent's land if

his herder willfully allowed it against his directions. A master is liable for the acts of his servant, done within the scope of his authority, although the servant disobeyed instructions. The former is only shielded from liability when the latter steps outside his general duty, and does an act to subserve his own interest or gratify his passions. If the herder in this case had driven the sheep upon the respondent's land to vex, annoy, and harass the respondent, had done it to indulge his own malevolence, the appellant would not have been liable, unless he was privy to the act. But if he did it to advance the appellant's interest, did it to enable the sheep to thrive, and thereby gain an advantage to the appellant, the latter would be liable, although the act was willful.

The following are the instructions refused by the court of which the appellant's counsel complains: "That before the jury can find for the plaintiff, they must find as a fact either that the trespasses were the personal acts of the defendants, or, if the acts of an agent or servant, that they were done by the express direction of the defendants; that the defendants are in no way liable for the willful and intentional trespass of their herder, or servant, unless they directed or authorized the same." "If you find that the sheep of defendants were on the land of the plaintiff, described in the complaint, but were there without the knowledge or consent of defendants, and against their express orders, then you must find for the defendants." "That if the jury find that the defendants instructed the herder not to herd on plaintiff's land, and that the herder willfully drove the sheep of the defendants thereon, it is the trespass of the herder, for which the defendants are not liable."

Some of these propositions, in the abstract, may in a general sense be correct, but the counsel was not entitled to have any of them given as asked. None of them were

sufficiently qualified, and the first one is not correct in any view. The acts of an agent or servant need not have been done by the " express " direction of the principal, or master, in order to make him liable. The defendant may have been liable for the willful and intentional trespass of the herder, and they may not have expressly directed or authorized it. If done within the scope of the herder's employment, the latter is liable for his acts, although they were willful and intentional. The third and fourth of said instructions asked and refused come within this principle. It is said to be a universal rule that whether the act of the servant be of omission or commission, whether his negligence, fraud, deceit, or perhaps even willful misconduct, occasion the injury, so long as it be done in the course and scope of his employment, his master is responsible in damages to third persons. And it makes no difference that the master did not give special orders; that he did not authorize or even know of the servant's act or neglect; for even though he disapproved or forbade it, so long as the act was done in the course of the servant's employment, he is none the less liable. (Schouler's Domestic Relations, sec. 637.) And in Shearman and Redfield on Negligence, it is said that " there is no such rule of law as that the master is not liable for the willful and wrongful acts of his servants; though such a doctrine has often been propounded in judicial opinions. There are many cases in which a master must be held liable for such acts; and there are numerous decisions holding him so liable which commend themselves to every man's sense of justice. The true ground upon which a master avoids liability for most of the willful acts of his servants, when unauthorized by him, is that they are not done in the course of the servant's employment. When they are so done, the master is liable for them." (Sec. 65.)

The herder in this case had charge of the sheep. It was his duty to keep them off the respondent's land, and whether he negligently or willfully violated it cannot, it seems to me, shield the appellant from liability for the damages done the respondent, so long as the act was within the course of the herder's employment. If he was the appellant's servant while doing the act, the latter is responsible; but if he were a principal in the transaction, were his own master, were doing the act upon his own responsibility, and to accomplish private ends, he alone is liable. The question to be determined in such cases is whether the party committing the act was in fact a servant, or was a principal in the affair. The rule of *respondeat superior* is applicable, and if the servant transcends the bounds of his authority, he becomes *pro hac vice* the superior, and the only one that can be made to respond to the injured party. I distinguish between the willfully doing of an act in such case and doing of it maliciously. The former may imply that it was done through stubborness and obstinacy, but not necessarily for any ulterior purpose; while the latter implies that it was done with an intent to injure. The one exhibits a set purpose to do the thing itself; the other to do it in order to gratify hatred or ill feeling. It was the appellant's duty to keep his sheep off the respondent's land. He was notified to do so, and if he employed ineffectual means to do it, he should be responsible, unless he were prevented by means over which he had no control. The herder may have acted willfully in the matter, but so long as he kept within the limit of his employment, the appellant was answerable for his acts. (Wharton on Negligence, sec. 171.) Whether the herder was pursuing the course of his employment or not when he permitted the sheep to eat off the respondent's grass, was a question for the jury. Their finding that he acted willfully in

regard to the matter would not have been sufficient, unless they should also find that he was acting to subserve a private end. (*Rounds* v. *D. L. & W. R. R. Co.*, 64 N. Y. 129; Wharton on Negligence, *supra*.)

The judgment appealed from should be affirmed.