Argued March 13, decided April 7, 1914.

## SCIBOR v. OREGON–WASHINGTON R. & N. CO.*

### (140 Pac. 629.)

**Corporations—Actions—Pleading—Acts of Agents.**

1. In an action against a corporation for an act committed by its agent, the acts are to be alleged as the acts of the corporation, and it is not necessary to allege that they were committed by an agent, or who was the agent, or the facts showing that the acts were within the scope of the agent's employment.

**Appeal and Error—Review—Refusal of Nonsuit.**

2. Though the plaintiff did not prove a cause sufficient to be submitted to the jury, the denial of a nonsuit will not be disturbed if the testimony afterward supplies the omission.

---

*Upon the liability of a master for arrest or false imprisonment by servant employed as detective, policeman or watchman, see notes in 4 L. R. A. (N. S.) 282 and 28 L. R. A. (N. S.) 88.    REPORTER.

**Judgment—Trial of Issues—Judgment Notwithstanding Verdict.**

3. The motion for judgment notwithstanding the verdict, authorized by Section 202, L. O. L., is only to permit a party to take advantage of error which has not before been assigned, and cannot be used to raise a question which has been included in a motion for nonsuit.

**Pleading—Motions—Striking Out Portion.**

4. There was no error in striking out of the answer an allegation in detail which was also included in a statement in general language under which proof of all facts suggested by the matter stricken out was admitted, except an item as to which there was no suggestion in the evidence.

**Evidence—Discharge of Sheriff's Deputy—Record.**

5. In an action against a corporation for injuries inflicted by a watchman who had been appointed a special deputy sheriff in making an arrest, the admission in evidence of the record of the sheriff's office to show the discharge of the watchman as a deputy before the acts complained of, by a notation in red ink, "Canceled 9—22—11 by order E. W.," over the brief entry showing the appointment, was not error; the appointment of deputies authorized by Sections 1036, 1037, L. O. L., continuing in force at the pleasure of the sheriff, and being terminable even by oral notice, and without regard to any request for the discharge.

[As to liability of master for act of servant who is also public officer, see note in Ann. Cas. 1913D, 112.]

**Master and Servant—Injuries to Third Persons—Scope of Employment.**

6. A watchman employed by a railroad company to prevent property from being stolen from its yards was within the scope of his authority in following the thief to his home, where other property of the railroad of the same kind was found stored, and in arresting a person found there guarding the property, and the railroad was liable if he did this in an unlawful manner.

[As to liability of master for assaults by servant, see note in 32 Am. St. Rep. 95.]

**Arrest—Instructions—Acts in Making Arrest.**

7. An instruction as to the amount of force an officer may use in making an arrest, that he need not have acted according to the high standard of a cool, collected man, nor would it be enough that his conduct was that of a man that was excitable, indiscreet and unnatural, but that the standard is the conduct of ordinarily prudent men under the existing circumstances, was not error.

[As to what constitutes arrest and what may be done to accomplish it, see note in 61 Am. Dec. 151.]

**Master and Servant—Injury to Third Person—Punitive Damages—Question for Jury.**

8. In an action against a railroad for injuries caused by a watchman in making an arrest, allegations in the answer justifying the acts of the watchman were sufficient to go to the jury on the question whether the railroad company ratified the watchman's acts so as to authorize the recovery of punitive damages.

From Multnomah: Henry E. McGinn, Judge.

Department 2.    Statement by Mr. Justice Eakin.

This is an action by Walter Scibor against the Oregon-Washington Railroad & Navigation Company, a corporation, for personal injuries received during an arrest of the plaintiff. In connection with its transportation business the defendant owns terminal yards at Albina, Portland, consisting of 200 or 300 acres covered with tracks and sidetracks, used in breaking up freight trains received from outside points, and for making up trains to be moved out of Portland. While in the yard loaded cars had frequently been broken open and goods stolen therefrom. During February, 1912, defendant kept watchmen in the yard day and night to prevent such depredations. Some of the watchmen were .appointed special deputy sheriffs on the request and at the expense of the defendant·in order that they might have authority to arrest the despoilers. About February 23d, and prior thereto, many cars loaded with wheat had been broken open, and many sacks of wheat stolen. W. A. Mack was such a watchman in the employ of defendant, and had been appointed special deputy sheriff for the purposes mentioned. On the night of February 23, 1912, he discovered one Thomas Scibor carrying wheat away from the yards to a point where were deposited two other sacks of wheat, marked with the brand of the sacks in defendant's cars, and later found at Thomas Scibor's dwelling about 25 or 30 sacks of wheat similarly marked, hidden away in the basement. At that time he also found this plaintiff, Walter Scibor, in the basement with said wheat, and arrested him as implicated in the larceny. Plaintiff resisted the arrest, receiving injuries and wounds at the hands of Mack, and this action was brought to recover damages for assault and for injuries received. The case was tried by a jury and resulted in a verdict for plaintiff in the sum of

$2,000. From a judgment therefor, the defendant appeals.                                   AFFIRMED.

For appellant there was a brief over the names of *Mr. Charles E. Cochran, Mr. William W. Cotton* and *Mr. Arthur C. Spencer,* with an oral argument by *Mr. Cochran.*

For respondent there was a brief with oral arguments by *Messrs. O'Day & Haddock.*

Mr. JUSTICE EAKIN delivered the opinion of the court.

1. At the close of plaintiff's testimony the defendant moved for a judgment of nonsuit, the denial of which defendant assigns as the first error. Two grounds for the motion are urged: (1) That the complaint does not state facts sufficient to constitute a cause of action, in that it does not allege who was defendant's agent in the assault, and does not state facts showing that such agent was acting within the scope of his employment when the arrest was made; (2) that the testimony was not sufficient to support the judgment, in that the acts of Mack, who made the arrest, were not shown to be within the scope of his employment, and therefore cannot bind defendant. The allegation of the complaint stating the facts of the assault is:

"That heretofore, to wit, February 23, 1912, the defendant herein willfully and maliciously made and caused to be made an assault upon the plaintiff herein, and did willfully and maliciously strike, beat, maul and bruise the plaintiff, and caused this plaintiff to be struck with a club or billy and revolver, and otherwise did assault and cause to be assaulted this plaintiff; whereupon," etc.

Defendant insists that this is a conclusion of fact, and that it is insufficient, for the reason that it does not

state by whom the defendant corporation acted, or allege facts showing Mack's relation to the corporation, or that his acts were within the scope of his employment. The allegation of the complaint is sufficient, unless it is necessary to state who was the agent acting for the defendant, and the facts showing that the wrongful acts were within the scope of his employment. We understand the rule to be that, in a cause of action against a corporation for an act committed by its agent, the acts are to be alleged as the acts of the corporation, and it is not necessary to allege that they were committed by an agent, or to state who was the agent, or the facts that show the acts were within the scope of the agent's employment. This is expressly stated in 5 Pl. & Pr. 92: See, also, *Cederson* v. *Navigation Co.,* 38 Or. 343 (62 Pac. 637, 63 Pac. 763); *Sullivan* v. *Oregon Ry. & N. Co.,* 12 Or. 392 (7 Pac. 508, 53 Am. Rep. 364). The complaint is not subject to the objection made.

2. As to the second objection, that the evidence is not sufficient to support the judgment, defendant now insists that the motion for the judgment of nonsuit should be determined from the evidence introduced prior to the motion; but it has been held in many Oregon cases that, if the plaintiff did not prove a cause sufficient to be submitted to a jury, a denial of the motion for nonsuit will not be disturbed if the testimony afterward supplies the omission: *Dryden* v. *Pelton-Armstrong Co.,* 53 Or. 418 (101 Pac. 90). In this case the subsequent testimony has cured many of the omissions in plaintiff's testimony.

3, 4. The motion for judgment notwithstanding the verdict, as provided by Section 202, L. O. L., is only to permit the party to take advantage of error which has not before been assigned. The question raised by the motion was included in the motion for nonsuit, and

cannot again be raised by this motion. The matter stricken out of the answer on motion was an allegation in greater detail, but was included in the statement of the answer in general language, namely: "Among other kinds of freight received at said terminal yards are hundreds of cars of wheat, and, after said cars have arrived at the Albina terminal yard, the same have been broken up and a large amount of sacks of said wheat have been taken." In the trial this was recognized as a sufficient allegation to admit proof of all the facts suggested by the matter stricken out, except as to the organization of the thieves, as to which there is no suggestion in the evidence. It was not error to strike out the portion mentioned.

5. Again, it is alleged to have been error to admit in evidence the record of the sheriff's office of the cancellation of the appointment of Mack as deputy sheriff. He was appointed August 15, 1911, at the request of E. B. Wood, special agent, Oregon-Washington Railroad & Navigation Company. The sheriff's office keeps a book, alphabetically arranged, in which are entered, very briefly, the name, address and character or purpose of the appointment of all deputy sheriffs. Mack's appointment was noted therein as follows: "8—15—11. Mack, Wm. A., watchman, O. W. R. & N. yards. Ex. 20a." Upon which is written in red ink, "Canceled 9—22—11, by order Ed Wood," which was testified by W. B. Hollingsworth, chief deputy. Section 1036, L. O. L., provides for the appointment of a general deputy, and Section 1037 provides for special deputies or special agents to do any particular act for him. The appointment continues in force during the pleasure of the sheriff. There is no provision of law as to how the authority of a deputy shall be terminated, so that a discharge even orally is sufficient to terminate it: Murfree, Sheriffs, §§ 16, 17. It may

be a matter of necessity that the office keep some note of appointments and cancellations; but so far as this case is concerned Mack's authority ceased on September 22, 1911. Whether Wood had authority to request the cancellation is not material, as the sheriff had power and authority to make the cancellation without request. However, the court's instructions practically informed the jury that a private citizen's right to make an arrest for a felony without a warrant is the same as that of an officer, so that it was immaterial whether Mack's appointment had been canceled.

6. Error is also assigned in the giving of the following instruction: "A corporation is responsible for the acts of its agents, not because it authorized its acts to be done, nor, in the doing of those acts that the agent represented the corporation, but the corporation is liable because the agent was at the time doing its business, and it is a rule of law that one must so conduct his business as not to bring injury to another, and the principal is liable for the acts of his agent, when the agent is doing the business of his principal." Mack's employment related to watching defendant's property, and to prevent its being stolen. He was employed and paid by the defendant, who had him appointed deputy sheriff that he might make arrests if anyone criminally interfered with defendant's property, for which services he was to be paid by the defendant. Defendant was aware that some property had been stolen and contemplated that other property would be carried off, and in such case it is not to be presumed that the watchman was not to follow the thieves and recapture the property, especially when he was given power to make arrests in such cases. In this case, when Mack followed some of this property being carried away, he was still defendant's agent in going to Thomas Scibor's home, finding the property, and arresting the

thief.  His work was not at any particular location, nor did it confine him to one place, being to watch all the property in the yard, which would necessarily include recapturing any of it that was being taken away. It was defendant's business that Mack was put there to perform.  The defendant may not have directed his actions nor approved thereof, yet, even though he violated instructions, the defendant was liable for the wrong if it was committed' while acting within the scope of his employment.  The only question is: Was Mack acting for the defendant in performing its business?  If he was and did it in an unlawful manner, the principal is liable.  This is made plain in *French* v. *Cresswell,* 13 Or. 418 (11 Pac. 62).  There is no suggestion in the evidence that Mack did not have authority to leave the right of way or yards of defendant, nor that he stepped aside from his employment as a watchman, and was acting for the sheriff or the county. On the contrary, his employment was not simply that of a watchman, but included, also, the duties of deputy sheriff as to anything necessary to be done in his employment as watchman, even though they took him away from the cars in his charge.  The appointment by the sheriff expressly limited his powers to the particular purpose named in the appointment, and expressly exempted the sheriff from liability for his compensation.

7. Defendant also objects to the instructions so far as they limit the amount of force that may be used by an officer in making an arrest to the amount necessary to so do, and no more.  On this question the court said:

"The law makes reasonable allowances for the infirmities of human judgment under the influence of human passion, and it does not require him to measure with methodical precision the degree of force necessary to arrest a person or repel an apparent attack, or to compel submission to an officer; it simply requires all

men, whether under the heat of sudden passion or extraordinary circumstances, to exercise such reasonable discretion in the use of force as under those peculiar circumstances may seem to be necessary.''

At the close of the instructions, when defendant excepted as above, the court said:

''Oh, yes, there is a reasonable latitude allowed. Of course the law makes an allowance for the imperfections of humanity, and it says we give you a man, a reasonable man, by which to determine whether a man acts hastily in a given case or not. We do not ask you to say that he would have acted according to the high standard of a cool, collected man, nor would it be enough that his conduct were that of a man that was excitable, indiscreet, and unnatural; but it says the standard which you shall adopt to determine this question whether he acted reasonably, in the light of all the surrounding circumstances, is the conduct of the ordinarily prudent man under all the existing circumstances, and, if his conduct was that of the ordinarily prudent man under the existing circumstances, then the law says he has done all that can be exacted of him.''

We think the court fairly presented to the jury the measure by which they were to judge whether Mack used excessive force in arresting plaintiff.

8. Defendant also excepted to the action of the court in giving to the jury the right to find punitive damages. The court assumed there was some evidence from which the jury might infer that the defendant ratified Mack's acts complained of here, and the existence of such evidence was necessary to justify the instruction. The defendant, by his answer, says:

''That said W. A. Mack, as such deputy sheriff, of Multnomah County, Oregon, for the purpose of apprehending the thieves and criminals engaged in the enterprise of abstracting said wheat and stealing the same, did keep a surveillance on the wheat cars which came into the Albina yard terminal, and did thereupon ap-

prehend and arrest one Thomas Scibor, a brother of the plaintiff, who had then and there in his possession certain of the defendant's wheat which the said Thomas Scibor had taken, stolen, and carried away from one of defendant's cars, located in said yard terminal; that said Thomas Scibor resided at 150 Fargo Street in the City of Portland, Oregon, and said W. A. Mack obtained said stolen wheat so found in the possession of said Thomas Scibor; * * the said W. A. Mack did go to the said house at 150 Fargo Street for the purpose of keeping surveillance upon the said stolen wheat, and for the purpose of arresting the said Thomas Scibor, and found the plaintiff herein in possession and charge of said wheat, who declared to the said W. A. Mack that he was the owner of the same. * * Whereupon the plaintiff resisted the said W. A. Mack, and did then and there assault and beat and violently attack the said W. A. Mack with a mop, and did strike him upon the arms and body, and immediately thereafter did seize a teakettle from the stove in said house, which teakettle contained boiling water, and did strike said W. A. Mack upon and about the head and body of him, the said W. A. Mack, and did scald and burn the said W. A. Mack until the skin of his face, head, shoulders, and arms dropped away, whereupon the said W. A. Mack, for the sole and only purpose of defending himself from great bodily harm, and for the purpose of restraining and subduing the plaintiff in making said arrest, and using no more force than was necessary in the premises, did then and there forcibly restrain said plaintiff and arrest him, * * and that the foregoing facts constitute the same transaction of which the plaintiff complains in his complaint, and not otherwise.''

And defendant thereby seeks to defend and justify the said acts of Mack. These allegations were sufficient to go to the jury upon the question as to whether defendant had knowledge of the particulars of the transaction and ratified them; and there was no

error in the instruction complained of as to punitive damages.

Finding no reversible error, the judgment is affirmed.                                    AFFIRMED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BEAN and MR. JUSTICE McNARY concur.