Argued at Pendleton May 4; affirmed June 8, 1937

## KNAPP *v.* STANDARD OIL CO. OF CALIFORNIA ET AL.

(68 P. (2d) 1052)

*Charles Z. Randall*, of Pendleton (Fee and Randall, of Pendleton, on the brief), for appellant Hampton.

*John F. Reilly*, of Portland (Wilson and Reilly, of Portland, on the brief), for appellant Standard Oil Company.

*John F. Kilkenny*, of Pendleton (Raley, Kilkenny and Raley, of Pendleton, on the brief), for respondent.

RAND, J. The plaintiff, while riding as a guest in an automobile driven by one B. F. Gill, sustained personal injuries in a collision between that and another

automobile owned and driven by A. L. Hampton, an employee of the Standard Oil Company of California. The collision occurred shortly after dark on the evening of June 29, 1936, on the Pendleton-John Day highway about 20 miles south of Long Creek. Hampton at the time was returning from Pendleton where he had been on business for his employer. Plaintiff brought this action to recover damages from Hampton and the company and obtained a verdict and judgment against both defendants for the sum of $3,500 as special and general damages, and both defendants have appealed.

The defendant company relies solely upon the overruling of its motions for nonsuit and for a directed verdict, while Hampton assigns as error the admission in evidence of a photograph, plaintiff's exhibit ''J'', and the refusal of the court to give one of his requested instructions. These are the only questions presented for decision upon this appeal.

The plaintiff based her cause of action upon the alleged negligence of Hampton in driving on the wrong side of the road. The defendants in their joint answer denied any negligence upon Hampton's part and alleged that the accident was caused solely by the negligence of Gill in driving on the wrong side of the highway. The trial court submitted this issue to the jury under instructions to which no exception was taken and, by the verdict, the issue has been determined against the defendants.

■ In support of its contention that its motions were improperly overruled, the defendant company contends that the evidence wholly failed to show that at the time of the accident the defendant Hampton was acting in the course of his employment or performing any duty which he owed to the defendant company. Its argu-

ment is that since, at the time, he was driving his own automobile and had exclusive control over its operation, the defendant company is not responsible for his negligence if he was negligent in the operation thereof.

As a part of her case in chief, the plaintiff called the defendant Hampton as a witness in her behalf, and he testified that he had been employed by the defendant company for the last 15 years and, for his services, was paid a monthly salary; that his duties were to promote the sales of Standard Oil products, call on customers and instruct other employees of the defendant company who were selling its products on commission; that his territory consisted of parts of Grant and Harney counties and included the towns of Burns, Harney, Crane, Seneca, John Day and Prairie City; that, in performing these duties, he had furnished his own automobile while traveling on company business up to April, 1936, and had received compensation therefor from the company; that, since said time, the company had furnished him with an automobile to be used when traveling on company business; that he was supposed to work eight hours each day, but was subject to call whenever the same was necessary; that he, shortly prior to the accident, had changed his residence to Burns and was residing there at the time of the accident; that on Saturday, June 27, 1936, two days before the accident, while in Burns, he was directed by Mr. Vivian, a district sales manager of the defendant company and one of his superior officers, to attend a meeting of its agents to be held on the following Monday in Pendleton, Oregon, for the purpose of promoting the sale of RPM motor oil, a new product that had been developed by the defendant company; that he left Burns on Sunday in his own automobile, taking his wife and

two daughters, who were going to Walla Walla to visit; that he reached Pendleton on Sunday, attended the meeting on the following day and, at the close of the meeting, about 5 o'clock in the afternoon, he started back, traveling alone and carrying with him certain pamphlets and literature that had been delivered to him by the company; that he intended to reach John Day that night and stop over there for the purpose of transacting some business for the company on the following day; that, while so returning and before reaching John Day, the collision occurred. He also testified that Pendleton is about 200 miles from Burns, and 128 miles from John Day; that there was railroad service between Burns and Pendleton but that, after receiving the instructions to go to Pendleton, there was no train leaving Burns for Pendleton until the following Monday morning and that, if he had taken it, he would have reached Pendleton too late for the meeting. His evidence also shows that the road he traveled in going to and from Pendleton was shorter than any other route he could have taken.

There was no other evidence offered in the case which in any way contradicted the evidence given by Hampton as to the relationship existing between him and the defendant company at the time of the accident or as to the purpose for which he was driving his own automobile and being at the place where he was at the time of the collision which caused plaintiff's injury. It is obvious from his testimony, however, that, upon the adjournment of the meeting in Pendleton, which he had been directed to attend, Hampton was under the same duty to return to the place of his employment and to resume the performance of his duties there as he was in the first instance to go to Pendleton, and it was for that purpose only, and not for any exclusive pur-

pose of his own, that he was returning to John Day, where he intended to stop over for the night and transact business for the company on the following day. That being so, he was acting within the course of his employment and performing a duty which he owed to the defendant company when the collision occurred and, for this reason, the contention that the relationship of master and servant did not exist between him and the defendant company at the time of the accident cannot be maintained.

■ It is a rule of general application that negligence in the conduct of another will not be imputed to a party if he neither authorized such conduct or participated therein, nor had the right or power to control it.

It is true that the evidence to which we have referred fails to establish any express direction for Hampton to return to John Day but under this evidence proof of an express direction was not essential. Authority to do an act may be either express or implied and, under the circumstances stated in Hampton's testimony, the authority for him to return and resume work must necessarily be implied. He was paid a monthly wage and he was required to work eight hours per day and the locus of his employment was the territory where his duties were to be performed and this required that he should return to his territory and resume work on the following day. Hence, the evidence was sufficient to warrant the jury in finding, as it did, that the relationship of master and servant did exist at the time of the accident and that Hampton, in so returning to the place of his employment, was acting in the performance of a duty then owing by him to the defendant company under its implied authority.

"It is clear", said Jessel, M. R., "that on principle a man is liable for another's tortious acts if he ex-

pressly directs him to do it, or if he employs that other person as his agent, and the act complained of is within the scope of the agent's authority.": *Smith v. Keal,* 9 Q. B. D. 351.

■ "The maxim, *Qui facit per alium facit per se,* then, is the statement of a rule of law, the scope of which is not limited by express authorization, and extends to cases where authority to act is implied only; and establishes an irrebuttable presumption in the circumstances in which it becomes applicable."

1 Beven, Negligence in Law (3d Ed.), p. 573.

■ As said by Lord Chelmsford, C., in *Bartonshill Coal Co. v. McGuire,* 3 Macq. (H. L. Sc.) 306:

"Every act which is done by a servant in the course of his duty is regarded as done by his master's orders, and consequently is the same as if it were the master's own act, according to the maxim, *Qui facit per alium facit per se.*"

The court said in *Bayley v. Manchester, Sheffield and Lincolnshire Ry. Co.,* L. R. 8 C. P. 152:

"The principle to be deduced from the authorities on this subject is, that where a servant is acting within the scope of his employment, and in so acting does something negligent or wrongful, the employer is liable, even though the act done may be the very reverse of that which the servant was actually directed to do."

■■ It is argued, however, that the test of whether the relation of master and servant exists is the control which the master has over the use of the instrumentality with which the injury is inflicted, and that, since the defendant Hampton and not the defendant company owned the automobile with which the injury was inflicted and was operating it at the time free from any immediate and actual control of the automobile by the defendant company, it follows that the relation of

master and servant did not exist between him and the defendant company. That contention cannot be sustained.

In the application of the rule relied upon by the defendant company, the word "control" is not held to mean the actual but the potential control, that is, the right or power to control which the master has over an instrumentality used by the servant while engaged in the business of the master. Under the evidence offered in the instant case, the defendant company had the right to control the operation of the automobile by Hampton. It had the right to say: "You will return to John Day by way of Baker and not by way of Long Creek", and how and when the automobile should be operated by him when transacting its business. Hence, under this evidence, proof of Hampton's ownership of the automobile and that he was operating it at the time of the accident is not proof that the relation of master and servant did not exist between him and the defendant company when, as here, the evidence showed that he was acting in the furtherance of the master's business at the time of the accident.

In *Wesolowski v. John Hancock Mut. Life Ins. Co.*, 308 Pa. 117 (162 Atl. 166, 87 A. L. R. 783), upon which the defendant company places its chief reliance, the court said:

"The test of the master's responsibility in all of these cases is authority to control the servant's use of the instrumentality with which the injury is inflicted."

In *Cusick v. Hutchison*, 318 Pa. 316 (177 Atl. 749), in explanation of the language used in the Wesolowski case, the same court said:

"In directing the nonsuit, the court below relied principally on Wesolowski v. John Hancock Mut. Life

Ins. Co., 308 Pa. 117, 162 A. 166, in which it was held that the defendant insurance company was not liable for an accident caused by the negligence of its soliciting agent in operating his own car while on his way to make collections for the company. There, however, the agent's territory was less than a square mile within the city of Philadelphia, and in no sense was the use of an automobile necessary for the performance of his duties within that territory. The company obviously did not intend that an automobile should be used in the transaction of its business; the fact that the agent had his own car and used it in his work was a matter of complete indifference to the company. In the instant case it was a fair inference that the roller had broken down completely, that its operation, and consequently the continuance of the construction, were wholly dependent upon the obtainment of a new part, and that under the circumstances the only reasonable way of obtaining it was for Evans to go to Scranton for it in his automobile. In view of that fact, the express authorization of the trip by the foreman in charge, who was undoubtedly entitled to speak for the master in the latter's absence, could fairly be said to have been within his supervisory authority, and Evans' use of the automobile in accordance with that authorization might thus reasonably have been found to be within the scope of his employment. Accordingly, the court below should have submitted the case to the jury, and its refusal to take off the nonsuit was error."

In defining the meaning of the word "control" in its application to cases where control is held to be a test of responsibility, the court, in *Elliason v. Western Coal & Coke Co.*, 162 Minn. 213 (202 N. W. 485), said:

"* * * By this we do not mean actual control or direction, for that is not essential, but rather the control which the law sees when one person performs services for another."

■ Under the evidence to which we have referred, it seems obvious that, although the defendant company

did not have the actual control of the servant and the automobile driven by him at the time of the accident, it did have potential control; that is to say, it did have the right or power to control the servant and the automobile which he was then driving and that, it seems, is all that is necessary to establish the liability of the defendant company for injuries resulting from the negligence of the servant while the servant was engaged in the performance of duties which, as a servant, he owed to the master.

In *Fetting v. Winch*, 54 Or. 600 (104 P. 722, 38 L. R. A. (N. S.) 379, 21 Ann. Cas. 352), this court said:

"The maxim of *respondeat superior* means that a master is responsible for the acts of its servants if the particular act causing the injury be within the scope of, and be done in the exercise of the servant's delegated authority. The test of the existence of the relation of master and servant is found in the exercise of authority in appointing the servant, in directing his acts, in receiving the benefits of his acts, and in reserving the power of dismissal."

As said by Beven in Negligence in Law (3d Ed.), Vol. 1, p. 571:

"* * * A master, is one who not only prescribes to the workman the end of his work, but retains 'the power of controlling the work,' while he who works on these terms is a servant so long as he acts with the view of serving the prescribed end."

As held in *New Orleans M. & R. Co. v. Hanning*, 15 Wall. (U. S.) 649, 656 (21 L. Ed. 220), the relation of master and servant exists when the employer retains the right to direct not only what shall be done but how it shall be done.

Hence, while it is true that the master has the right or power to control the manner in which a servant

shall do his work, it is not always the sole test for determining such relationship. It is, however, the test of the master's liability for the negligent acts of the servant while engaged in the performance of his duties as servant. It is also the test for determining whether a party who is engaged in the performance of work for another is a servant or an independent contractor.

■ As said by Street in his work on Foundations of Legal Liability, Vol. II, p. 453:

"* * * When speaking in the language of the books on master and servant we say that the master is liable for any act of the servant done in the course of his employment and in furtherance of it."

■ Nor do we find any authority for the contention that, because the automobile which caused the injuries complained of was the property of the servant and not of the master, the master is not responsible. As said in *Altoonian v. Muldonian*, 277 Mass. 53 (177 N. E. 830), which was an action for tort brought by a minor to recover for personal injuries received when struck by a bicycle operated by a minor son of the defendant:

"Whether the bicycle was owned by the defendant or by his son was immaterial if, as the jury were warranted in finding, it was at the time of the accident being used by the son while acting as the servant or agent of the defendant and he was at that time delivering goods to customers of the defendant."

So, in this case, it is immaterial whether the automobile which caused the injuries complained of was owned by the defendant company or by the defendant Hampton, since there was evidence showing that it was being used by Hampton while acting as the servant or agent of the defendant company and in furtherance of its business. For these reasons, the motions for nonsuit and for a directed verdict were properly overruled.

 We find no merit in the contention urged by the defendant Hampton that plaintiff's exhibit "J" was improperly received in evidence. It was a photograph taken on the morning following the accident after the automobile in which the plaintiff was riding had been towed to a garage in Pilot Rock, and it had been properly identified before being offered in evidence. There was no suggestion that it had not been honestly taken for the purpose of showing the true condition of the car after the accident, nor was there any contention made that any change had occurred after the accident and before the photograph was taken. The action of the trial court in admitting or refusing to admit photographs in evidence is largely a matter of discretion of the trial court which will not be disturbed unless abused: *State v. Miller,* 43 Or. 325 (74 P. 658). See also *Hoover v. Turner,* 42 Ohio App. 528 (182 N. E. 598). In the latter case the court said:

"* * * a court should act with great care in receiving photos taken after there has been any change in the objects which are the subject of evidence in the case. * * * 'Preliminary proof should be made that the object or person which is the subject of the photograph is fairly represented.' Varner v. Varner, 16 Ohio Cir. Ct. R. 386; Cincinnati, H. & D. Ry. Co. v. De Onzo, 87 Ohio St. 109, 100 N. E. 320."

 The defendants requested the court to charge the jury that

"If your verdict is for the plaintiff then I instruct you that you cannot allow plaintiff any damages on account of any sinus infection or headaches resulting from such sinus infection, for the reason that there was no competent evidence that any such sinus trouble or headache resulting therefrom were caused by the accident complained of."

Over the exception of the defendants, the trial court refused to give the requested instruction and, in lieu thereof, charged as follows:

"If your verdict is for the plaintiff, then in assessing her damages you should not allow her any damages for any injuries or condition not shown by a preponderance of the evidence to have been the direct and proximate result of the accident."

There was evidence tending to show that prior to the accident the plaintiff had not suffered from sinus trouble or headaches and there was medical testimony tending to show that sinus trouble resulting in headaches was liable to result from injuries such as those which plaintiff had sustained. In view of this testimony, we think the question whether sinus trouble and headaches with which the plaintiff was suffering were caused by the accident sustained by the plaintiff was for the jury and that the court's action in refusing to give the requested instruction and in substituting therefor the one given was not erroneous.

Finding no error, the judgment appealed from must be affirmed, and it is so ordered.

BEAN, C. J., and ROSSMAN and BAILEY, JJ., concur.