## PACIFIC TELEPHONE & TELEGRAPH CO. v. WHITE.
### No. 9044.

Circuit Court of Appeals, Ninth Circuit.
June 15, 1939.

Omar C. Spencer and Howard T. McCulloch, both of Portland, Or. (Carey,

Hart, Spencer & McCulloch, of Portland, Or., of counsel), for appellant.

Eugene C. Libby and Barge E. Leonard, both of Portland, Or., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

GARRECHT, Circuit Judge.

Coe C. White filed a complaint in the Circuit Court of the State of Oregon for the county of Multnomah against appellant and one H. A. Hansley, its agent, servant and employee. The cause was removed to the District Court of the United States upon the ground of diversity of citizenship.

An amended complaint was filed, which alleged that H. A. Hansley, an agent of appellant, while acting within the scope of his employment, committed an assault and battery upon the appellee, Coe C. White, in the police station in the City of Portland, Oregon, about three o'clock in the morning of January 17, 1937. It further alleged that this assault was the culmination of fruitless efforts on the part of H. A. Hansley to secure information from the appellee as to the perpetrators of the crime of assault and robbery, while armed with a dangerous weapon, which had been committed in appellant's cashier in Portland, Oregon, on January 9, 1937. In its answer to the amended complaint the appellant admitted the allegations respecting its corporate capacity and that H. A. Hansley was its servant and agent. All other allegations of the amended complaint were denied.

There was evidence that at the city jail, after hours of questioning of White by Hansley, during all of which time White continued to reiterate his innocence of the said crime and his ignorance of the names of the persons who had committed it, Hansley, the Chief Special Agent for appellant, apparently became enraged and without aggravation or provocation struck and beat White about the head and neck with such force and violence as to render him unconscious in which state he was removed from the jail to the hospital where he remained in that condition for a long time.

The case proceeded to trial and the jury returned a verdict for the plaintiff, finding in his favor for the sum of $2,625, compensatory or actual damages, and $9,750 punitive damages and judgment was entered for said amounts. The defendant moved for arrest of judgment and for a new trial which the court denied, filing an opinion. D.C., 24 F.Supp. 871.

It is conceded that, "so far as this appeal is concerned, the jury's verdict must be considered as a conclusive finding that the appellee was, in fact, assaulted by H. A. Hansley."

The appellant claims that the trial court erred in its instructions to the jury and in refusing to give two instructions requested by it. The defendant-appellant's requested instructions refused are as follows:

"III. There is no evidence in this case that the defendant The Pacific Telephone Company either authorized or ratified any alleged assault and battery committed by H. A. Hansley. Consequently, I instruct you that you cannot make any award of punitive damages in this case."

"VI. It is the law in the state of Oregon that an employer is not responsible for punitive damages for the malicious, willful or wanton acts of his employee, unless such acts were authorized or ratified by the employer. In this case, therefore, unless you find, first, that H. A. Hansley maliciously assaulted and battered the plaintiff, and, secondly, that The Pacific Telephone and Telegraph Company either authorized or ratified such assault and battery, if any, then there can be no recovery of punitive damages in this case."

The portions of the instructions given by the court to the jury which are complained of on this appeal are as follows:

"The main fact in this case is whether you believe the plaintiff's story, that he was struck by the defendant's agent Hansley. If you don't believe his claim in that respect, if you are not satisfied of it by a preponderance of the evidence, then you must find for the defendant. But you must further find, before you can fix liability on the defendant, that Hansley was acting within the scope of his employment. That means that you must find that he reasonably felt that what he was doing was in the interest of his employer and was not a wilful act on his part, or not in disregard of any express instructions he might have been given on the subject. That does not mean, however, that he must have been expressly authorized by his superiors to take any action of this sort, if he did take such action. And so, if you find from a preponderance of the evidence,

that he struck White, and that he was acting within the scope of his employment, then your verdict must be for the plaintiff and it will be your duty to assess his damages."

"Plaintiff has also claimed punitive damages and in the plaintiff's form of verdict that will be submitted to you will be one blank to fill in actual damages, if you find for the plaintiff and if you find he was damaged, and in the second line you will fill in punitive damages. If you find for the plaintiff, and if you find he was actually damaged, then you may proceed to assess punitive damages, if you think they are fairly allowable and correctly allowable in this case. You can't find punitive damages unless you find also actual damages.

"Now to allow plaintiff punitive damages you must find that the blow, if it was struck, was struck maliciously and wantonly, and with reckless disregard of plaintiff's situation and of his rights. And in fixing the amount, should you find punitive damages, you are entitled to consider the deterrent effect on actions of others that the allowance of such damages might have."

As we view the questions presented, we are to determine whether the instructions, those given and those requested and refused, set out above, properly state the law of the state of Oregon on the subject of scope of employment and liability of the master for punitive damages for the tort of its agent. This first involves the question whether appellant's agent Hansley was acting within the scope of his employment at the time he assaulted White. If so, then the question of liability for punitive damages becomes of importance.

■ H. A. Hansley was, at the time of the assault and of the trial, the Chief Special Agent for the Pacific Telephone and Telegraph Company for the entire territory served by the company—California, Oregon, Washington, Nevada, and part of Idaho—and maintained his headquarters at San Francisco. The duties of a special agent of the appellant company "are to investigate cases of damage to company property by outsiders, or damages to outsiders by company property or employees, the loss of funds or matters that may become controversial with regard to outsiders." E. D. Wise, vice president and general manager of appellant company for

the state of Oregon stated Hansley's duties were of a staff nature—to advise the president and managers throughout the district, with general authority to make a complete and full investigation and to assist the law enforcing officers. Hansley had been assigned to the case from the head office of the company in San Francisco. He did not stop at Portland, but went directly to Seattle, Washington, where, on January 13, 1937, he met Lieutenant Schulpius of the Portland Police Force. They then went to Portland, in company with R. V. Jenkins, a special agent for the Oregon area, and one Morris [Sam?] Albohaire, an informant, who had been arrested in Seattle in connection with the robbery. Upon arrival in Portland Hansley reported his presence, and the reason therefor, to Wise. On January 17, 1937, Wise was advised by Jenkins of the interview had by Hansley and himself with White. Hansley had no further interview with White subsequent to January 17, 1937.

It appears from the foregoing recital of facts that Hansley was not a menial employee or servant of the appellant company, but was vested with a certain amount of discretion and, within bounds, the exercise of independent judgment. He had authority to make a complete and full investigation of cases to which he was assigned and this necessarily included the authority to question persons involved. If, in the course of questioning, he overstepped the rights of third persons, his acts must be chargeable to his company. When the headoffice of the company assigned Hansley, its chief special agent, having general authority to make full investigation of this case, it set in motion the events which culminated in the assault of White; it must be held responsible for the act which otherwise never would have occurred.

■ Were it not for its officers and agents a corporation could not act; they perform its functions and formulate its policies. It is not contended that the ranking officers specifically directed and commanded Hansley to set upon and beat White or that they commended Hansley for so doing, but the man who was assigned to investigate such cases did assault White while acting within the scope of his employment—so the jury found—and it is not within the province of this court to disregard this finding of fact and exonerate appellant from blame because the specific act may

not have been authorized or directed by some officers superior to Hansley.

■ - Under the holding of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, we must look to the law of the state of Oregon for the final answer to the questions presented. The views we have just expressed upon the question of scope of employment find ample support in the decisions of that state.

In Newkirk v. Oregon-Wash. R. R. & Nav. Co., 128 Or. 28, 38, 273 P. 707, 710, 72 A.L.R. 530, a brakeman ejected Newkirk from a moving freight train whereby Newkirk was severely injured. The court, in affirming a judgment for the plaintiff, said:

"We conclude that defendant seeks release from liability because it never authorized any of its trainmen to eject a trespasser from a train while in motion. But when an employé does in the course of his employment a duty in an improper manner, his employer is liable for any consequent injury, even though the employé disobeyed his orders.

" 'A master is liable for the acts of his servant done within the scope of his authority, although the servant disobeyed instructions.' French v. Cresswell, 13 Or. 418, 11 P. 62."

. The Supreme Court of the State of Oregon, in Hantke v. Harris Ice Machine Works, 152 Or. 564, 567, 54 P.2d 293, 295, said:

"The principle invoked by plaintiff comprises a maxim of the common law. [Respondeat superior.] In English, it is expressed by the mandate, 'Let the superior respond.' It means that the principal or master should be answerable for the acts of his agent or servant. It is based on the principle that a duty rests upon every man, in the management of his own affairs, whether by himself or by his agents or servants, so to conduct them as not to injure another, and that, if he fails in that duty and another is thereby injured, he shall answer for the damage. 21 R.C.L. 845.

"Before this rule may be applied, it must be shown that the relationship of principal and agent or master and servant existed at the time the damage was done, and that the servant was acting in the course of his employment. The term 'in the course of his employment,' as here

used, means 'while engaged in the service of the master,' and is not synonymous with the phrase 'during the period covered by his employment.' Slater v. Advance Thresher Co., 97 Minn. 305, 107 N.W. 133, 136, 5 L.R.A.(N.S.) 598."

See also Fetting v. Winch, 54 Or. 600, 603, 104 P. 722, 38 L.R.A.,N.S., 379, 21 Ann.Cas. 352.

■ The "true test of whether a master is liable for the act of his servant is whether the servant at the time of the commission of the injury was performing a service for the master in furtherance of the master's business, not whether it was done in exact observance of detail prescribed by his employer." Tyler v. Moore et al., 111 Or. 499, 509, 226 P. 443, 446. Additional authorities: Knapp v. Standard Oil Co., 156 Or. 564, 575, 68 P.2d 1052; Olds v. Von der Hellen et al., 127 Or. 276, 286, 263 P. 907, 270 P. 497; Scibor v. Oregon-Washington R. & N. Co., 70 Or. 116, 123, 140 P. 629; Dalrymple v. Covey Motor Car Co., 66 Or. 533, 541, 135 P. 91, 48 L. R.A.,N.S., 424; Goodwin v. Rowe, 67 Or. 1, 8, 135 P. 171, Ann.Cas.1915C, 416.

■ It is clear from these authorities that the trial court did not err in its instructions on the question of liability of the defendant for acts of Hansley within the scope of his employment. The court also said in the course of this instruction, "That means that you must find that he reasonably felt that what he was doing was in the interest of his employer and was not a willful act on his part, or not in disregard of any express instructions he might have been given on the subject." The appellant contends that this particular sentence is also objectionable, asserting that it makes the intention of the agent or servant the test, rather than the authority. But, contrary to the contention, this sentence is really more favorable to the appellant than was necessary, because the Supreme Court of Oregon has held that where the acts of the servant are done within the scope of the servant's authority the master is liable even though the servant disobeyed instructions (French v. Cresswell, 13 Or. 418, 11 P. 62; Newkirk v. Oregon-Washington R. R. & N. Co., supra); even though he acted in violation of express orders. Dalrymple v. Covey Motor Car Co., supra.

■ The remaining question to be considered is whether the trial court erred in

refusing to give defendant's requested instructions III and VI, relating to punitive damages, and in instructing the jury that it was permissible to grant punitive damages. The instructions, given and refused, have been heretofore set forth. If punitive damages may be assessed in such a case as we have here before us, no error was committed by the trial court on that score.

It would seem, upon first inspection, that the law of Oregon on this subject is not clearly defined. There is one line of authority which holds that the principal cannot be held liable for the tortious act of a servant unless the principal directed the doing of the act, or ratified it after it was done. This doctrine had its first expression in Oregon decisions in Sullivan v. Oregon Ry. & Nav. Co., 1885, 12 Or. 392, at page 404, 7 P. 508, at page 515, 53 Am.Rep. 364, where the court found error in the instruction by the trial court to the jury, "that if they should find from the evidence that the injury was malicious and willful, or was caused by gross and wanton negligence, amounting to a total disregard of all social obligations, they would allow such sum as they would deem just and proper by way of punishment, and to deter others from such malicious, and grossly and wantonly negligent, acts in the future." The court, after citing Cleghorn v. New York Cent. & H. R. R. Co., 56 N.Y. 44, 15 Am.Rep. 375, decided "the master [is] liable for such [exemplary] damages when he is chargeable with gross neglect in the employment or retention in his services of an incompetent servant, knowing at the time of his unsuitability, or that he authorized or ratified the act of the servant in the particular case." The case of Gill v. Selling et al., 1928, 125 Or. 587, 593, 267 P. 812, 58 A. L.R. 1556, followed and quoted the Sullivan case, supra. The case of Fuller et al. v. Blanc, Or., 1938, 83 P.2d 434, 435, is in line with the two former cases: "In this jurisdiction a principal cannot be held in punitive damages for the act of his agent committed without his knowledge and without ratification by the principal." Citing Gill v. Selling, supra.

In the Sullivan case the servant was a conductor on a train; in the Fuller case the servants were sheep herders; while in the Gill v. Selling case, the erring servant was apparently a nurse. In neither the Sullivan case nor the Fuller case does the court discuss the dignity of the authority of the servant. In Gill v. Selling, supra, the court suggests a distinction between it and Bingham v. Lipman, 40 Or. 363, 67 P. 98, in that in the latter case the managing agents of the corporation defendant participated in and sanctioned the wrongful act. 125 Or. 587, at page 594, 267 P. 812, 58 A.L.R. 1556.

This leads to what we believe the sounder and more logical viewpoint on this subject. As early as 1901, the Supreme Court of Oregon, in Bingham v. Lipman, 40 Or. 363, 371, 67 P. 98, 101, referred to above, held that: " * * * Whatever the true rule may be, however, where it is sought to charge a corporation with exemplary damages on account of the malicious acts of its subordinate agents, there can be no room for controversy that where, as in this case, the officers actually wielding the whole executive power of the corporation participated in and directed all that was planned and done, their malicious, wanton, or oppressive intent may be treated as the intent of the corporation itself, for which it is liable to answer in exemplary damages [case cited.]."

The case of Pelton v. General Motors Acceptance Corp., 1932, 139 Or. 198, 204, 205, 7 P.2d 263, 266, 9 P.2d 128, further broadened the rule of Bingham v. Lipman, supra. Pelton, under the name of John W. Clarkson, purchased an automobile on conditional sales contract, which contract was assigned to General Motors Acceptance Corporation. Pelton defaulted in two monthly payments and G.M.A.C. notified Fireman's Fund Insurance Company to repossess the car in accordance with a previously existing contract between the two corporations. One Hofmiller, an agent of Fireman's Fund located and took possession of the automobile at 2 o'clock on the morning of September 5, 1930. Pelton, through his son, had made the two payments, which were in default, at the office of G.M.A.C. on September 3, 1930, and one Broadbent, "credit man" for G.M. A.C., who had supervision of the contract in question, undertook to notify Hofmiller of such payment but was unable to do so. Pelton, who was in bed at the time of the repossession, had been advised by telephone that Hofmiller was having his car towed to a garage and immediately appeared on the scene and advised Hofmiller that he had made the payments and had a receipt therefor. Hofmiller, en route to the

garage to which he was taking the car for storage, suggested that Pelton contact some member of G.M.A.C., as he was willing to surrender the car if so advised. Hofmiller called Broadbent on the telephone and stood by while Pelton talked to Broadbent. There was a dispute as to the conversation, but the car was not returned to Pelton and G.M.A.C. refused to accept Hofmiller's report and the storage check and it appears that neither G.M.A.C. or Fireman's Fund wanted the "hot" automobile. Broadbent checked the records of his company on September 5th, and ascertained that the payments had been made by Pelton, but made no effort to see Pelton or return the automobile. On September 6th Pelton brought action, praying compensatory and punitive damages against G.M.A.C. and Hofmiller. A nonsuit was granted as to the latter and judgment had against G.M.A.C., from which it appealed. Respecting punitive damages the court said: "There is much confusion and uncertainty in the authorities relative to the law of punitive damages as applied to corporations. [Citations.] Whatever may be the rule in other jurisdictions, it seems to be settled here that a corporation is not liable in punitive damages for the wrongful act of its menial agent, unless such act was authorized or ratified, Sullivan v. Oregon R. & N. Co., 12 Or. 392, 7 P. 508, 53 Am.Rep. 364; Bingham v. Lipman, 40 Or. 363, 67 P. 98; and such seems to be the rule whether corporations or individuals are involved, Gill v. Selling, 125 Or. 587, 267 P. 812, 58 A.L.R. 1556. However, we do not consider that Broadbent may be classified as an inferior or menial agent. He was directed by the credit manager to exercise supervision over the collection of the amount due under the contract with the plaintiff. * * *"

The Pelton case was followed by McCarthy v. General Electric Company, 1935, 151 Or. 519, 525, 49 P.2d 993, 995, 100 A. L.R. 1370. In the McCarthy case the servant who committed the tortious act was a credit man and office manager of defendant Graybar Electric Company. Appeal was taken from a judgment in favor of plaintiff and against all defendants for compensatory and punitive damages. The Supreme Court of Oregon said: "Having held that there is evidence showing actual damages, it remains to be determined whether the finding of the jury as to punitive damages can be sustained. The trial court held, as a preliminary matter of law, that such issue was a matter for the consideration of the jury. We think no error was committed. If the evidence offered on behalf of the plaintiff is to be given full faith and credit, it seems clear that there was a willful and wanton disregard of the property rights of the plaintiff. The credit manager was an experienced business executive. The jury was not obliged to believe that he acted in good faith and that the trespass thus committed was merely the result of inadvertence and poor judgment. Reasonable argument could be made that Young [the credit manager] showed an utter disregard for the rights of the plaintiff. The case is analogous to Pelton v. General Motors Acceptance Corporation, 139 Or. 198, 7 P.(2d) 263, 9 P.(2d) 128, wherein a finding of punitive damages was upheld."

It having been brought out in the testimony that Hansley was Chief Special Agent for the appellant company and not a menial servant, in the light of the Lipman, Pelton and McCarthy cases, we are brought to the conclusion that the trial court correctly declined to give requested instructions III and VI and committed no error in its instructions given on the question of punitive damages.

Since the argument of this case appellant has brought to our attention a decision of the Supreme Court of Oregon filed May 9, 1939, in the case of Coe C. White, respondent v. Pac. Tel. & Tel. Co., a corporation and R. V. Jenkins, appellants, 90 P.2d 193.

White recovered a judgment on the verdict of a jury in that action which had been brought for the alleged malicious prosecution of the criminal action based on his asserted commission of the offense for which he was being held in jail where the assault, the subject of this action, occurred.

The Supreme Court of Oregon reversed the judgment giving various reasons therefor, none of which have any bearing on the case at bar. The principal reason in which the judges all concurred being that as White had been bound over to the Grand Jury by a committing magistrate and there was no showing that the action was obtained "by false or other improper means" the judgment could not be sustained.

No error appearing in the record, the judgment is affirmed.