Argued December 14, 1927, affirmed January 31, submitted on petition for rehearing April 26, former opinion modified September 25, motion to recall mandate denied November 20, 1928.

M. D. OLDS *v.* WM. VON DER HELLEN ET AL.

(263 Pac. 907; 270 Pac. 497.)

For appellants there was a brief over the name of *Mr. J. M. Devers*, with an oral argument by *Mr. Porter J. Neff*.

For respondent there was a brief and oral argument by *Mr. George M. Roberts*.

RAND, C. J.—This is an action to recover the damages resulting from the alleged negligent burning of plaintiff's building. The defendants named in the complaint were William Von der Hellen, Paul B. Rynning, Polk Smith, Eugene J. Dietz, Charles Parrent and Fidelity & Deposit Company of Maryland. The last-named defendant was not served and made no voluntary appearance in the action. During the trial the action was dismissed as to all of the defendants except William Von der Hellen and Eugene J. Dietz. As against them the court gave plaintiff judgment for $2,500, together with the costs and disbursements of the action.

■ At the close of the testimony, the two defendants against whom judgment was rendered as well as plaintiff moved for a directed verdict and thereupon the court discharged the jury and made and filed. findings of fact and conclusions of law and entered judgment thereon. From this judgment the defendants Von der Hellen and Dietz have appealed, contending that there was no evidence to sustain the findings. There is no question raised as to the procedure followed by the court in discharging the jury. This was in accordance with the rule which prevails in this state that where, in an action at law the plaintiff and defendant each move for a directed verdict, the trial judge may discharge the jury and determine the issues of law and fact or he may permit the jury, under proper instructions, to determine the issues of fact and enter a judgment upon the verdict. The trial court found that the defendant Dietz was an employee and under the direction of Von der Hellen at the time of the fire and that Von der Hellen and Dietz at said time were unlawfully using the building in question without permission of the owner and had wrongfully stored gasoline therein which, because of the negligence of said defendants, had caught fire and caused the building to be entirely consumed to plaintiff's damage in the sum of $4,000, and that the building had been insured in the sum of $1,500, for which plaintiff had received payment, and gave plaintiff judgment against the defendants for the sum of $2,500, the balance of the unpaid damages so found to have been sustained.

It appeared from the evidence that the defendant Von der Hellen had entered into a contract with the

Oregon State Highway Commission to surface a section of the Medford-Crater Lake Highway between Trail and Agate; that this contract contained a provision which required him, when called upon by the Highway Commission, to perform what is referred to in the contract as extra or force account work, that is, work not specifically mentioned in the contract, for which it was stipulated he was to be paid the actual costs thereof plus 15 per cent for labor and 5 per cent for material; and that, while the work was being performed, the Highway Commission required, as extra or force account work, certain portions of the work to be sprinkled.

It also appeared from the evidence that the Pacific and Eastern Railroad Company, which subsequently became insolvent, had constructed a line of track, a depot building and water-tank at Eagle Point, a short distance from where the work was being performed; that its property had been sold, and that plaintiff had become the owner thereof and was such owner of the building at the time of the fire.

It also appears that the resident engineer of the Highway Commission had instructed Von der Hellen, as contractor, to obtain permission from plaintiff, and that he did obtain permission from an agent of the plaintiff, to use the water-tank and pump at Eagle Point; that, in order to obtain such permission, it was agreed that Von der Hellen should employ one Polk Smith, one of the parties originally named as a defendant in the action, to operate the pump; that Smith did operate said pump until the time of the fire; and that said water-tank and pump were situated 250 to 300 feet from said depot building.

It also appears from the evidence that instead of requiring the contractor to furnish the truck and drivers for hauling the water from said point to the place where the work was being done, the Highway Commission furnished its own truck and its own drivers and Von der Hellen was only required to furnish the gasoline which was used in the operation of the pump and the truck; that defendant Dietz and Charles Parrent, originally named as defendant, were the two drivers who operated the truck and that they were both employees of the Highway Commission and not of Von der Hellen. It also appears that Von der Hellen purchased the gasoline from the Standard Oil Company and had it delivered at said depot building, and that it was charged to him in a separate account, for which he was later paid by the Highway Commission.

The evidence also shows that the depot consisted of a freight-room, a waiting-room and an office, and that there was an inclosed space at the back of one of these rooms in which the belt and batteries used in running the pump were kept; that this part of the building was inclosed by a picket fence and door, which was kept locked by a switch lock and key; that the key to this room was delivered to Polk Smith and that, when the gasoline was delivered, Smith directed Dietz and Parrent to store the gasoline in said inclosed space and gave them the key; that this space was kept locked and the key was hung over the door, where it could be used by any of them; that the gasoline was so stored, and that the remaining parts of the building were at all times kept unlocked.

The fire occurred on the night of August 13, 1921, when Dietz was on shift and at a time when he was at or near the water-tank. Dietz testified that he noticed the fire and, upon going into the building he found that the faucet of the drum containing the gasoline was leaking and that it had flowed into and filled a five-gallon can and was then leaking over the floor which was on fire; that he attempted to put out the fire, was overcome by the flames, and that the building was entirely consumed.

■■■ We find no evidence in the record sustaining the finding that the storing of gasoline by defendants in the building was not authorized by plaintiff or the finding that Dietz and Parrent, or either of them, were employees of Von der Hellen. On the contrary, the whole evidence showed that H. L. Cox was the agent of plaintiff and had charge of the building and, when called as a witness for plaintiff, he testified that he gave to Polk Smith the key to the door leading into the room of the building where the gasoline was kept, and, in answer to a direct question asked by counsel for plaintiff, Mr. Cox testified that Smith "would have a right to keep the stuff where it had been kept." Again, the whole evidence showed that both Dietz and Parrent had for years been permanently employed by the Highway Commission and that neither of them had ever been employed by Von der Hellen. The doctrine of *respondeat superior* implies that the person sought to be charged must stand in the relation of superior to the person doing the wrongful act: 1 Thompson on the Law of Negligence, § 578. The master is liable for injuries which occur to third persons as the natural, direct and proximate result of an act

which the principal has expressly directed or authorized his agent to do. But such liability of the master is based upon the general principles of agency and cannot otherwise exist: 2 Mechem on Agency (2 ed.), §§ 1873–1875. The whole evidence showed that the relation of principal and agent or master and servant had never existed between Von der Hellen and Dietz and Parrent and that neither expressly nor by implication had they been authorized by Von der Hellen to do any of the acts complained of in the complaint and hence their negligence could not be imputed to Von der Hellen. From this it follows that unless there was evidence of other facts and other findings than those referred to, neither the evidence nor the findings would sustain a judgment against Von der Hellen. But the evidence showed and the court found that the relation of master and servant existed between Von der Hellen and Smith and there was evidence from which it could fairly and reasonably be inferred that Smith was negligent in not exercising reasonable care in looking after the handling and disposal of the gasoline after it had been placed in the building.

■ The evidence showed that the key to the room where the gasoline was kept had been delivered by plaintiff's agent to Smith and that Smith had selected this room as the place where the gasoline should be kept and had directed Dietz and Parrent to place it there and that, after it was placed there, Smith used it in operating the pump. The evidence further showed that Dietz and Parrent, during the noon hour of the day when the fire occurred, went into the room and removed twenty gallons thereof and used it for filling the tank of the truck, and

Dietz testified that he returned for a truck-load of water about 8 or 8:30 o'clock that evening and noticed a light in the depot building and that, after filling the truck with water, he passed by the building and saw that it was on fire. Upon entering the building he discovered that the faucet to the drum had not been completely turned off and that the gasoline had run out into and filled a five-gallon can and had then spread over the floor and was burning. He testified that he was in the habit of smoking, and that when he went to the depot he was in need of gasoline. He also testified that neither he nor Parrent had been in the building after being there at noon until the time of the fire and that he was the one operating the truck during the afternoon and evening of that day. His testimony also showed that the room was kept locked and that the key to the lock of the door was kept hanging above the door, where it could be used by himself, Parrent and Smith, and, so far as the evidence shows, they were the only ones using the gasoline. In the doing of the acts above referred to, Smith was engaged in the business of his master and was acting within the course of his employment and for any negligent act of his while so engaged and so acting, resulting in damage to plaintiff, Von der Hellen is liable.

Permission having been granted to Von der Hellen to store his gasoline in plaintiff's building, plaintiff was entitled to expect that Von der Hellen or any servant he might employ would exercise reasonable care in handling the gasoline so as to protect the building from being burned and, after evidence had been offered by plaintiff tending to show that reasonable care had not been used and that the

building had been burned because thereof, the burden was cast upon Von der Hellen to show that the building was not burned because of his own negligence or that of his servant.

■ Smith was one of the defendants in the action and during the trial the action was dismissed as to him. He was not called as a witness and no explanation was made by Von der Hellen of the reason why he was not called or what connection, if any, he may have had with the burning of the building. If the fire occurred without his fault, he could have been called as a witness and that fact could have been shown. The fact that he was not called and no denial made of his not having been responsible for the fire was a circumstance tending to show that if he had been called his testimony would have been unfavorable to Von der Hellen, and brought the case within the application of the rule "that evidence is to be estimated, not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce and of the other to contradict," as provided by Section 868, subdivision 6, Or. L.

■ Under the evidence, we think there are sufficient facts shown to justify the court in finding that the burning of the building was caused by the negligent acts of both Smith, the servant of Von der Hellen, and Dietz, and, for that reason, a judgment based upon such findings was sustained by the evidence. The inference to be drawn from this evidence in the absence of a jury was a question for the trial court and the finding of the court that there was negligence and that Smith and Dietz were negligent and that their negligence was the natural, direct

and proximate cause of the damage is by force of the statute deemed a verdict and such finding is binding upon this court on this appeal.

In proof of the *quantum* of damage, plaintiff offered the testimony of one R. I. Stuart, a contractor and builder, who testified that it would cost $5,000 to replace the burned building with a new building of the same kind and class. From his testimony it appears that the building was a wooden structure and had been constructed ten years before the fire and that in his estimation it had depreciated 20 or 25 per cent and he based his estimate of its value entirely upon its replacement cost less depreciation. The trial court adopted, as a proper measure of damage, his said estimate and figured the depreciation at 20 per cent and entered a judgment upon the theory that the building was of the value of $4,000 at the time of the fire. We think that, in adopting this measure of damage, the court applied a wrong principle of law and failed to consider other factors which should have entered into the determination of its value. The building was a wooden structure ten years of age and had been built as a railroad depot and for railroad purposes only. The railroad was not in operation and had not been completely constructed and there was nothing to show that there was any likelihood that the building would ever be serviceable for railroad purposes. It was situate at a remote point from any operating railroad and near a very small village and there was nothing to show that the building had any rental value for any purpose. We think that these circumstances should have been considered in determining the question of value.

██ If the court had not discharged the jury and had submitted to a jury the same measure of damage that the court itself adopted and an appeal had been taken therefrom, we would have been required either to reverse the case or else to enter a new judgment, based upon the value of the building at the time of the fire determined by a proper measure of damage. The building had been insured for $1,500 and the evidence showed that plaintiff had received that sum. We think that under the evidence and the facts and circumstances surrounding the case that the value of the building at the time of the fire did not exceed the sum of $2,500.

 As heretofore stated, the trial court, after finding that the property at the time of the fire was of the value of $4,000 and that plaintiff had sustained damages in that sum by reason of the complete destruction of the building, deducted therefrom the amount of $1,500, which plaintiff had received from the insurance upon the building, and gave plaintiff judgment for the difference between the two amounts. The authority of the court to make such deduction and to give judgment for the balance only was not questioned by plaintiff either in the trial or upon the hearing in this court and, but for the fact that a different value has been placed upon the building by this court, the matter would not be referred to in this opinion. We find no authority under which such a deduction can be upheld. The rule in this state is that where insured property is destroyed by fire caused by the wrongful act or negligence of a third party, an insurance company paying the loss is to the extent of the payment thereby subrogated to the owner's cause of action against the wrong-

doer: *Home Mutual Ins. Co.* v. *Oregon R. & N. Co.,* 20 Or. 569 (26 Pac. 857, 23 Am. St. Rep. 151). In the case last cited, speaking through Mr. Justice LORD, this court said:

"Where the insurance company has paid the owner for the destruction of his property by fire, occasioned by the fault of a railroad company, and afterwards the owner receives the amount from the company in satisfaction of his damages, he holds it in trust for the insurance company, and it may recover it from him by a suit in equity. * * The subrogation of the insurer to the remedies of the insured for the destruction of the insured property upon the payment of the loss, operates as an equitable assignment to the insurer to the extent of the amount paid. 'It is in the nature,' said SHAW, C. J., 'of an equitable assignment, which authorized the assignee to sue in the name of the assignor, for his own benefit.'"

In that case, the court held that there could be but one action against the wrongdoer and that where the owner had recovered the full loss from the wrongdoer and had also received insurance upon the destroyed property, the insurer was subrogated to the rights of the insured and could recover from the insured the amount paid by the insurer by a suit in equity. It would be a strange doctrine if for the loss of property by fire caused by the wrongful or negligent acts of a third party, such third party, when sued by the owner of the property for the damage sustained, could set up and maintain as a defense that no judgment could be taken against him because the owner had been paid the full amount of his loss by an insurance company. Such a result was *pro tanto* obtained in this case by the deduction of the insurance money from the loss sustained by the owner. The deduction was, therefore, improp-

erly made. However, since plaintiff obtained judgment in the trial court for the full amount of the loss sustained notwithstanding said deduction and for no greater sum, the judgment appealed from must be affirmed, and it is so ordered. AFFIRMED.

BEAN, ROSSMAN and BROWN, JJ., concur.

Former opinion modified on petition for rehearing September 25, 1928.

ON PETITION FOR REHEARING.

(270 Pac. 497.)

For the petition, *Mr. Porter J. Neff* and *Mr. J. M. Devers.*

*Contra, Mr. George M. Roberts.*

PER CURIAM.—An urgent petition for rehearing has been presented by defendants in this case based upon three contentions, namely:

"1. The court erred in refusing to credit the amount of $1500.00 fire insurance which had been received by plaintiff, upon the value of the depot building destroyed.

"2. The court erred in fixing the value of the depot building destroyed at $2500.00 or any other amount in excess of $1000.00.

"3. The court erred in holding that Polk Smith was an employee of defendant Von der Hellen and that he was responsible on the principle of *respondeat superior* for any negligence of said Smith."

The original opinion is recorded in 263 Pac. 907. The second and third grounds for re-

hearing involve questions of fact. A re-examination of the evidence and the briefs convinces us that there was evidence sufficient to go to a jury to find the value of the building at the time it was destroyed. Defendant contends that the only evidence of the value was the testimony of Bullis. We cannot agree with defendant's contention in that behalf. The witness Stewart in behalf of plaintiff testified to facts from which a jury could deduce a proper conclusion as to the value. The fact that Stewart and the court adopted an erroneous method for determining the value of the building does not eliminate the evidence from which that deduction was made. There was also sufficient evidence to support the finding that Polk Smith was an employee of Von der Hellen. The findings of the judge in an action at law have the weight of the verdict of a jury. For that reason we do not disturb the findings of fact made by the court below, excepting the value of the building. The record discloses that the trial court adopted a wrong principle of law in arriving at the value; therefore, this court modified the finding in that regard: 263 Pac. 907, 910, 911.

We are inclined to believe that the petitioners for rehearing are correct on the first basis of · their petition. That a litigant is bound by his pleading is elementary law. A plaintiff will not be allowed to dispute his own allegations of fact. Admissions by the plaintiff in his complaint are conclusive against him: *Grants Pass Hardware Co.* v. *Calvert*, 71 Or. 103, 109 (142 Pac. 569); 1 Ency. of Evidence, 398, 613, § (2); 21 R. C. L. 601, 607, §§ 148, 151; 4 Wigmore, 3619, § 2589; 22 C. J., 332, § 373. There is no dispute about the amount paid plaintiff

by the insurance company. The original opinion in the instant case correctly states the law. The $1,500 should not have been deducted by plaintiff from his claim of damages. Plaintiff should have joined the insurance company with him in this action and demanded the full amount of the damage suffered: *Rorvik* v. *North Pac. Lumber Co.*, 99 Or. 58, 94 (195 Pac. 163), and cases there cited. Plaintiff could have waived his entire claim for damages. He could as well waive a part of such claim. This he did in his complaint by deducting the amount paid by the insurance company from his claim. Defendants did not object to the omission to make the insurance company a party and thereby waived their right to object. The complaint was demurrable on the ground of defect of parties. That ground of demurrer was waived by answering: Or. L., § 72, and authorities cited in *Rorvik* v. *North Pac. Lumber Co.*, above.

We think it was error on our part to allow plaintiff the benefit of the $1,500. Defendants were not entitled to credit for that amount. They did not pay it. Because plaintiff in his complaint deducted the amount he received from the insurance company from his demand we think the court is without authority to give him judgment for the amount received from the insurance company. On the contrary, that amount should be deducted from the value of the building. A plaintiff is never allowed more than he demands in actions for damages. Plaintiff is bound by his admission and allegations respecting the insurance, and the court should not deny defendants the benefit thereof.

For these reasons the former judgment in this court in the instant case will be modified so as to deduct from the $2,500, which we find to be the value of the building destroyed, the sum of $1,500 and render judgment in favor of plaintiff in the sum of $1,000. The case is remanded to the Circuit Court for Jackson County, with directions to enter judgment in favor of plaintiff for the sum of $1,000 against defendants Von der Hellen and Eugene J. Dietz, who will recover costs in this court but not in the court below. MODIFIED.

BEAN and COSHOW, JJ., not sitting.