CONDOR INVESTMENT COMPANY, an Oregon corporation, Plaintiff,

v.

PACIFIC COCA-COLA BOTTLING CO., a Delaware corporation, Defendant.

Civ. No. 62–8.

United States District Court
D. Oregon.

Nov. 15, 1962.

James B. O'Hanlon of Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for defendant.

John Gordon Gearin of Koerner, Young, McColloch & Dezendorf, Portland, Or., for plaintiff.

KILKENNY, District Judge.

This matter is before the Court on the issues created by defendant's plea in abatement, in which it is charged that plaintiff is not the real party in interest and that the action should be abated in conformity with the provisions of Rule 17(a), F.R.Civ.P.

In May, 1960, plaintiff was the owner of a certain building which was damaged by fire. Plaintiff alleges that the loss was due to defendant's negligence. Plaintiff's loss was covered by insurance in three different companies. Each company paid its share of the loss totalling $11,710.66.

In due course, plaintiff filed proofs of loss and the agreed amount of the loss was paid by each insurance company in connection with a "loan receipt agreement" under which drafts payable to plaintiff were delivered by each of insurers. It is defendant's position that the drafts were given in payment of the respective losses, did not constitute loans and, as a consequence, the insurance companies are the real parties in interest.

The issues involved present the following questions:

(1) Are the loan receipts invalid when viewed in the light of the insurance policies, the proofs of loss and the applicable Oregon law; and

(2) Did the parties intend to negotiate loans or intend that the drafts were, in fact, payment in full for the fire loss.

The cause was submitted to the Court on the exhibits and the depositions of certain witnesses.

Since the Oregon statute [1] requires the issuance of a standard fire insurance policy in the state of Oregon, I must assume that the policies required the insurance companies to *pay* the amount of the loss, rather than loan the plaintiff the amount of the losses.

A typical statement in proof of loss used by plaintiff on its claims against the respective companies is set forth in the margin.[2] Also typical is the loan receipt set forth in the margin.[3]

---

1. "ORS 744.100

\* \* \* \* \*

" 'This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which hereby are made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

\* \* \* \* \*

" 'The amount of loss for which this company may be liable shall be payable 60 days after proof of loss, as herein provided, is received by this company and ascertainment of the loss is made either by agreement between the insured and this company expressed in writing or by the filing with this company of an award as herein provided.

\* \* \* \* \*

" 'This company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this company.' "

2. "SWORN STATEMENT IN PROOF OF LOSS

| $10,000.00 | F36c–26123 |
|---|---|
| Amount of Policy at time of loss | Policy Number |
| 2–24–59 | Portland, Ore |
| Date Issued | Agency At |
| 2–24–62 | Dooly & Co. |
| Date Expires | Agent |

To the Atlantic Mutual Insurance Company of ————. At time of loss by the above indicated policy of insurance you insured Condor Investment Company against loss by fire only to the property described under Schedule 'A', according to the terms and conditions of the said policy and all forms, endorsements, transfers and assignments attached thereto.

Fire

1. Time and Origin: A State Kind loss occurred about the hour of Early o'clock A.M., on the 10 day of May, 1960. The cause and origin of the said

3. See note 3 on page 673.

I. Defendant contends that where the insurance policy makes no provision for a loan of the amount of the claim, in lieu of direct payment and sub-

loss were: Overheated Motor in Coca-cola Cooler.

2. Occupancy: The building described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatever: Mercantile, Theater, Offices.

3. Title and Interest: At the time of the loss the interest of your insured in the property described therein was Owners. No other person or persons had any interest therein or incumbrance thereon, except: No exceptions

4. Changes: Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession, location or exposure of the property described, except: No exceptions

5. Total Insurance: The total amount of insurance upon the property described by this policy was, at the time of the loss, $88,500.00, as more particularly specified in the apportionment attached under Schedule 'C,' besides which there was no policy or other contract of insurance, written or oral, valid or invalid.

6. The Actual Cash Value of said property at the time of the loss was Appraised . . . $ 98,402

7. The Whole Loss and Damage was . . . $11,710.56

8. The Amount Claimed under the above numbered policy is . . . . . $ 1,323.23

The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles —— mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property ———— has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof.

The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver of any of its rights. * * *."

3. "LOAN RECEIPT
RECEIVED FROM THE Atlantic Mutual Insurance Company (Hereinafter referred to as 'Company') THE SUM OF One Thousand Nine Hundred Eighty Four Dollars and Eighty Four Cents Dollars ($1,984.84) as a loan, without inter-

est, repayable only in the event and to the extent of any net recovery the undersigned may make from any person, persons, corporation or corporations, or other parties, causing or liable for the loss or damage to the property described below, or from any insurance effected on such property, and as security for such repayment the undersigned hereby pledges to the said 'Company' all his, its or their claim or claims against said person, persons, corporation or corporations or other parties, or from any insurance carrier or carriers, and any recovery thereon, and hereby delivers to said 'Company' all documents necessary to show his, its or their interest in said property.

The undersigned covenants that no settlement has been made by the undersigned with any person, persons, corporation or corporations, or other parties against whom a claim may lie, and no release has been given to anyone responsible for such loss and that no such settlement will be made, nor release given without the written consent of the said Company; and the undersigned covenants and agrees to cooperate fully with the said Company, to promptly present claim and, if necessary, to commence, enter into and prosecute suit against such person or persons, corporation or corporations, or other parties, through whose negligence or other fault the aforesaid loss was caused, or who may otherwise be responsible therefor, with all due diligence, in his, its or their own name.

In further consideration of said advance the undersigned hereby guarantee(s) that he, it or they are the owner(s) of said property and entitled to recover upon said claim for loss or damage thereto, and hereby appoint(s) the managers and/or agents of the said 'Company' and their successors severally, his, its or their agent(s) and attorney(s)-in-fact, with irrevocable power, to collect any such claim or claims, and to begin, prosecute, compromise or withdraw in his, its or their name, but at the expense of the said 'company,' any and all legal proceedings that the said 'Company' may deem necessary to enforce such claim or claims, and to execute in the name of the undersigned, any documents that may be necessary to carry the same into effect for the purposes of this agreement.

Any legal proceedings are to be under the exclusive direction and control of said 'Company.'

The property hereinabove set forth is as follows: * * *."

rogation, then any loan agreement which might be signed by the insurer and the insured would be of no consequence and that this would be particularly true where payment of the loss is required by statute. Defendant's theory finds adequate support in Rosenfeld v. Continental Building Operating Company, 135 F. Supp. 465 (D.C.W.D.Mo., 1955). In that case Mr. Justice Whittaker, then acting as a District Judge, applied the New York law and held that the payment of the loss, even though evidenced by a loan receipt, would not constitute payment unless the policy so provided. If the question was open in Oregon, I would be inclined to follow the Rosenfeld case and hold that these loan receipts negotiated and executed after the insured and insurers had agreed on settlements, constituted nothing more than shams and subterfuges which entirely misrepresented the real nature of the agreements. Be that as it may, I feel that the Supreme Court of Oregon has set at rest all doubt on the subject by its decisions upholding the validity of such loan agreements in Furrer v. Yew Creek Logging Co., 206 Or. 382, 292 P.2d 499, and Lamb-Weston, Inc. v. Oregon Automobile Insurance Co., 219 Or. 110, 341 P.2d 110, 346 P.2d 643, 76 A.L.R.2d 485. As a matter of interest, I was one of trial counsel for Oregon Automobile in the latter case. Defendant argues that the precise question was presented in neither Furrer nor Lamb-Weston. The Rosenfeld case was decided in December, 1955, and the Furrer case was decided in February, 1956. The Oregon Court in Furrer discusses and then discards the reasoning in Scarborough v. Bartholomew, City Ct., 22 N.Y.S.2d 635, aff'd 263 App.Div. 765, 30 N.Y.S.2d 971, the very case which is cited by Justice Whittaker in support of his finding that the New York law controlled his decision. Although the provisions of the standard fire insurance policy, required by the Oregon statute, are not discussed in those cases, this Court must presume that the Oregon Court was familiar with the statutes of

its own state and that consideration was given to the provisions of those statutes in those decisions. In Oregon such agreements are valid even though the policy makes no provision for a loan.

II. The second point raised by defendant is that the evidence, consisting of the testimony in the depositions and the exhibits, definitely shows that the parties intended to make the payments in satisfaction of the claims under the insurance policies, rather than the making of loans as recited in the loan agreement. Obviously, some of the printed language used on some of the drafts, both on the face and on the reverse side, would indicate an intention other than a loan.

Since all of the statements in proof of loss and all of the loan receipts signed by plaintiff and issued to different companies were signed on the same day, it is quite clear that plaintiff and the insurance companies were engaged in the settlement of all claims as part and parcel of one transaction. All of the checks were dated either the 16th or 17th of August, 1960. Attention must be drawn to the fact that the original claim of plaintiff was in excess of the amounts agreed upon and which were set forth in the sworn proofs of loss. The total of the amounts set forth in those proofs is identical with the total of the checks which were issued by the respective insurance companies. Of course, this demonstrates that an agreement had been reached on the exact amount of the loss and the exact amount each insurance company was to pay, at the time the proofs were signed. There is no evidence of any negotiation as to the validity of the claims after the proofs of loss had been filed. The next thing that happened was the issuance of the checks. The printed language on the checks issued by one of the insurance companies, "Being in full settlement of" was obliterated and substituted therefor was the language, "Adv. as loan." The printed

language on the checks [4] of the other companies was unaltered and there is no doubt that these were given in full settlement of the fire claim, and not as a loan.

 It is of interest and, in my opinion, of great importance, that all of these drafts were delivered to the plaintiff at the same time, endorsed and accepted by plaintiff and then deposited to its bank account. Likewise, of considerable importance is the fact that the drafts which were marked as "Adv. as loan" clearly show that the money paid was on the particular policy under a particular claim number. Turning to the claim, we find that the amount claimed in the proof of loss [5] is exactly the same as the amount in the draft. The proof of loss is usual in form and contains no request for a loan. Although reciting that the money was paid as an advance on the loan, it is quite clear that the check was issued in connection with the proof of loss. Both the Furrer and the Lamb-Weston cases indicate that the intention of the parties controls the validity of the loan receipts. Defendant being a third party, the parol evidence rule has no application. Keadle v. Padden, 143 Or. 350, 20 P.2d 403, 22 P.2d 892; Commercial Securities v. Mast, 145 Or. 394, 28 P.2d 635, 92 A.L.R. 194. This is a case where the documents are highly ambiguous and contradictory. In such case, in order to determine the intention of the parties, I must look to the practical interpretation as placed on those instruments by the parties themselves. Pekovich v. Coughlin, 258 F.2d 191, 17 Alaska 691 (9 Cir., 1958); Pacific Portland Cement Co. v. Food Machinery & Chemical Corp., 178 F.2d 541 (9 Cir., 1949); Lease v. Corvallis Sand & Gravel Co., 185 F.2d 570 (9 Cir., 1950); Holbrook v. United States, 194 F.Supp. 252 (D.C.Or., 1961); Kinney v. Schlussel, 116 Or. 376, 239 P. 818.

Although the loan receipts recite the actual receipt of a specific sum of money, as a fact, the record discloses that no such sum of money was advanced at that time nor was the money paid until after the proofs of loss under the policies had been received by the respective companies some 10 or 12 days after the date of the loan receipts. The parties, with few exceptions, treated the transactions as the settlement of ordinary claims under fire insurance policies. There is a common law presumption that the ordinary course of business has been followed. The plaintiff did not treat this transaction as a loan. When the money was received, it was deposited in plaintiff's bank account and shortly checked out in full payment of the contractor's charges for repair of the fire loss. If the transactions constituted loans, would not the plaintiff have made proper entry of the debt on its books? It made no such entry. If the transaction was in truth and in fact a loan, would the insurance companies, in at least three instances, issue drafts reciting that they were in full and complete settlement of the fire loss? In the other instances, would the company have issued a draft or check which was normally used to pay claims, which draft recited that the payment was made on a particular *proof of loss* under a *specific insurance policy*? To do so would not be following normal business practice. The building manager of plaintiff, it is true, testified that he had specific reasons for handling the transaction as a loan, rather than as a complete settlement of the claim. However, he did not hesitate to accept and endorse the drafts which recited that they were in full and complete settlement and release of the claims under the insurance policy. His testimony is not convincing.

 A complete study and analysis of the entire record convinces me that the

---

4. Drafts of Chubb & Son, Inc.
"In full settlement of (indicate nature of claim) FIRE. For loss or accident occurring 5/10/60."
Endorsement on reverse side of draft:
"By endorsement hereof the payee acknowledges having received the amount of this draft in full settlement of claim as described on the face of this draft."

5. Typical example:
"The Amount Claimed under the above policy is . . . . . . . $1323.23."

parties to these instruments never actually intended the transactions as loans, but, on the other hand, intended that the drafts should be accepted as full payment of their claims under the insurance policies. I find that Atlantic Mutual Insurance Company, The London Assurance and Vigilant Insurance Company are real parties in interest and indispensible to this proceeding. It follows that defendant has prevailed on its plea in abatement. Ten days are allowed in which to join said insurance companies as parties plaintiff, or defendant. If not so joined, the action shall be abated and dismissed.

This opinion shall stand as my findings on the issues of law and fact here presented.