Argued April 17, reversed and remanded with
instructions June 25, reconsideration denied
August 14, petition for review denied October 9, 1979

NORTHERN INSURANCE COMPANY OF
NEW YORK, *Appellant,*

*v.*

CONN ORGAN CORPORATION, et al, *Defendants,*

THE MARSHALL COMPANY, et al, *Respondents.*

*and*

THE MARSHALL FIXTURE COMPANY,
*Third Party Plaintiff,*

*v.*

E. R. CARPENTER COMPANY, INC.,
*Third Party Defendant.*

(No. 44588, CA 11500)

596 P2d 605

David P. Morrison, Portland, argued the cause for appellant. With him on the briefs was Cosgrave, Kester, Crowe, Gidley & Lagesen, Portland.

John C. Mercer, Portland, argued the cause for respondents. With him on the brief was Gearin, Landis & Aebi, Portland.

Before Schwab, Chief Judge, and Thornton and Joseph, Judges.

JOSEPH, J.

**JOSEPH, J.**

This is an action for property damage arising out of a fire in a church. Plaintiff Northern Insurance Company of New York (the insurer) appeals from judgments entered for defendants Marshall Company (Marshall) and Marshall Fixture Company (Marshall Fixture) on their demurrers.

The fire occurred on March 17, 1973. It originated in an organ and spread to pew cushions, the flammability of which allegedly contributed to causing substantial additional damage to the inside of the building. The church submitted a claim to the insurer and negotiated with the insurer's representative to determine the amount of the loss. During the negotiations, the insurer paid the church $15,000 for debris removal. After the representative and the church reached agreement on the amount of the fire loss, the church executed a proof of loss and a release.[1] Prior to disbursement of the balance of the agreed benefits, and at the insurer's request, the church executed two loan receipts,[2] one for $191,614.92 (which included the $15,000 for debris removal) and one for $1,111.52.

---

[1] The release stated:

"IN CONSIDERATION of the sum of *One Hundred Ninety One, Six Hundred Fourteen & 92/100* Dollars ($191,614.92), and other good and valuable considerations to me/us paid, the receipt whereof is hereby acknowledged, I/we, *1st Assembly of God* (being of lawful age) do hereby release and forever discharge *Maryland Casualty* heirs, administrators, executors, successors and assigns, from any and all action, causes of action, claims and demands whatsoever for, upon, or by reason of any damage, loss or injury and all consequential damage, which heretofore have been or which hereafter may be sustained by me/us in consequence of *Fire Damage to Church 2817 Santiam Highway Albany, Oregon.*

"IT BEING FURTHER AGREED AND UNDERSTOOD, that the payment of said amount is not to be construed as an admission of liability, but is a compromise of a disputed claim and that this release is executed in full settlement and satisfaction of rights of the undersigned under Policy No. *N-161-21-71* * * *."

[2] Each loan receipt was as follows:

"Received from the *The Maryland Cas. Co.* (hereinafter referred to as 'company') the sum of * * * as a loan, without interest, repayable

In October, 1973, an action was begun in the name of the church against the Conn Organ Company (which manufactured the organ), the Rifes, doing business as Conn Organ Sales and Studios (who had sold the organ to the church), and Marshall (which sold and installed the pews and cushions). The damages prayed for were equal to the total payments made to the church by the insurer. Marshall filed a plea in abatement, alleging that the insurer had paid the loss and was the real party in interest. After an evidentiary hearing, the court dismissed the plea.

only in the event and to the extent of any net recovery the undersigned may make from any person, persons, corporation or corporations, or other parties, causing or liable for the loss or damage to the property described below, or from any insurance effected on such property. And as security for such repayment the undersigned hereby pledged to the said 'company' all his, its or their claim or claims against said person, persons, corporation or corporations or other parties, or from any insurance carrier or carriers, and any recovery thereon, and hereby delivers to said 'company' all documents necessary to show his, its or their interest in said property.

"The undersigned covenants that no settlement has been made by the undersigned with any person, persons, corporation or corporations, or other parties against whom a claim may lie, and no release has been given to anyone responsible for such loss and that no such settlement will be made, nor release given without the written consent of the said company, and the undersigned covenants and agrees to cooperate fully with the said company, to promptly present claim and, if necessary, to commence, enter into and prosecute suit against such person or persons, corporation or corporations, or other parties, through whose negligence or other fault the aforesaid loss was caused, or who may otherwise be responsible therefore, with all due diligence, in his, its or their own name.

"In further consideration of said advance the undersigned hereby guarantee(s) that he, it or they are the owner(s) of said property and entitled to recover upon said claim for loss or damage thereto and hereby appoint(s) the managers and/or agents of the said 'company' and their successors severally, his, its or their agent(s) and attorney(s)-in-fact, with irrevocable power, to collect any such claim or claims, and to begin, prosecute, compromise or withdraw in his, its or their name, but at the expense of the said 'company,' any and all legal proceedings that the said 'company' may deem necessary to enforce such claim or claims, and to execute in the name of the undersigned, any documents that may be necessary to carry the same into effect for the purposes of this agreement.

"Any legal proceedings are to be under the exclusive direction and control of said 'company'"

On April 8, 1976, the church filed an amended complaint, adding Marshall Fixture, which designed and manufactured the pew cushions, as a defendant. Marshall Fixture filed a plea in abatement, raising the same real party in interest issue as Marshall had, and it also filed a third party complaint against Carpenter Company (Carpenter). Carpenter subsequently filed a plea in abatement, raising the same issue as Marshall Fixture's plea. An evidentiary hearing on those pleas was held before the same judge who had ruled against Marshall on the issue. He reached a different result than he had on the earlier plea. He concluded that the insurer was the real party in interest and ordered the action abated until an "amended complaint" be filed naming the insurer as a party plaintiff.

On March 15, 1977, the insurer filed a complaint (designated a "third amended complaint") naming only itself as plaintiff. It bore the same file number as the earlied property and entitled to recover upon said claim for loss or damage thereto and hereby appoint(s) the manaound that the insurer's cause of action was barred by the two-year statute of limitations of ORS 12.135(1). The Rife and Conn Organ demurrers were overruled. The demurrers of Marshall and Marshall Fixture were sustained. After permission to file a fourth amended complaint was denied, judgments were entered in favor of Marshall and Marshall Fixture and against the insurer. Subsequently, the claim against Conn Organ was compromised and dismissed. The third party complaint against Carpenter was dismissed by Marshall Fixture. The insurer appeals the judgment for Marshall and Marshall Fixture. The church is not a party to the appeal, having neither filed a notice of appeal nor having been named in the notice filed by the insurer.[3]

The insurer first argues that the trial court erred in ruling that it, and not the church, was the real party in

---

[3] We note, too, that no dismissal was ever entered as to the church and that no formality was followed to substitute the insurer as plaintiff: it simply filed a "third amended complaint."

[789]

interest. ORS 13.030 requires that all actions be brought in the name of the real party in interest. In effect, the insurer's contention is that the ruling resulted directly in the filing of the third amended complaint, which named the insurer as sole plaintiff and which led to the judgments after the demurrers on statute of limitations grounds.

Defendants do not challenge the right of the insurer to contest the validity of the order abating the church's action, but we believe it would create misunderstanding if the point went unnoticed. When the order was made, the insurer was not a party; therefore, in legal contemplation, no interest of the insurer was affected—or, in the terms of ORS 19.010(2)(a), it was not "an order affecting a substantial right, and which in effect determines the action * * *" as to the insurer. The church has not appealed,[4] and the insurer is now engaged in what might seem to amount to a collateral attack on an order the parties to which have not challenged.

A procedural oddity was introduced into this case when the insurer filed the "third amended complaint" in its own name without a formal order substituting it as the sole party plaintiff. Except for a recital of the insurer's capacity and the issuance of the policy to the church, that complaint was substantially identical to the second amended complaint filed by the church. None of the defendants raised an objection to the insurer's capacity or standing; they demurred on the statute of limitations. As noted above, the Conn Organ and the Rife demurrers were overruled, and they eventually settled with the insurer. It is clear that Marshall and Marshall Fixture would have been hard put to challenge the substitution of the insurer as a party plaintiff *in the same action*; similarly they could not now be heard to object to the insurer's being

---

[4] It could not have appealed when the order was made. As to Conn Organ Company, the Rifes and Marshall, the action by the church (as the real party in interest) was still pending. *See Dlouhy v. Simpson Timber Co.*, 247 Or 571, 431 P2d 846 (1967).

treated as having been properly substituted for the church as a party plaintiff. ORS 16.330.

█ Even so, the insurer was not a party to, or at the time of, the abatement order, and ORS 19.010(2)(a) standing by itself might well be read to prevent the validity of the order being challenged in the absence of the church as a party to the appeal. Moreover, there is a question whether this court has jurisdiction over the appeal at all. We are required to examine our own jurisdiction even if the parties do not challenge it. *City of Hermiston v. ERB*, 280 Or 291, 570 P2d 663 (1977).

ORS 19.023 provides:

"(1) An appeal * * * to the Court of Appeals shall be taken in the manner prescribed in ORS 19.023 to 19.065 and 19.074 to 19.190.

"(2) A party to a judgment desiring to appeal therefrom, * * * shall cause a notice, signed by himself or his attorney, to be *served on all parties as have appeared in the action*, * * * and file the original, with proof of service endorsed thereon or affixed thereto, * * *.

"(3) The notice shall be in the form prescribed in ORS 19.029, * * *." (Emphasis supplied.)

ORS 19.033 provides:

"(1) When the notice of appeal has been *served and filed* as provided in ORS 19.023 to 19.209, * * * the Court of Appeals shall have jurisdiction of the cause, * * *.

"(2) The *serving and filing* of the notice of appeal as provided in ORS 19.023 to 19.029 is jurisdictional *and may not be waived* or extended." (Emphasis supplied.)

ORS 19.029(1) provides:

"(1) The notice of appeal shall contain the following:

"* * * * *

"(c) A notice to *all parties or their attorneys as have appeared in the action, * * * that an appeal is taken from the judgment * * *. (Emphasis supplied.)
"* * * * *."

■ The taking of this appeal was defective in at least three respects[5] that relate to our jurisdiction, the church having been a party and having appeared. The church was not named in the notice of appeal; the notice was not directed to the church; and the church was not served with the notice. Although the Supreme Court has been divided over questions about which of the required contents of a notice of appeal set forth in ORS 19.029 are jurisdictional *(see Gordon Creek Tree Farms v. Layne*, 230 Or 204, 358 P2d 1062 (1962); *Millard v. Mitchell Bros.*, 261 Or 165, 492 P2d 783 (1972); *Pohrman v. Klamath Co. Comm.*, 272 Or 390, 538 P2d 70 (1975); *Stahl v. Krasowski*, 281 Or 33, 573 P2d 309 (1978)), there has been no recent indication whether a failure to serve a notice of appeal "on all parties that have appeared in the action" (ORS 19.023) could be regarded as other than a jurisdictional defect and fatal to the appeal, given the language of ORS 19.033(2) quoted above.

■ Nonetheless, we are not required to dismiss this appeal for want of jurisdiction because of the singular procedural circumstances. After the filing of the third amended complaint, all of the defendants[6] conducted themselves as if the church had never been a party at all. Furthermore, the attorneys for the insurer were the same ones who had represented the church. A perfect compliance with the statutes would have involved naming their former clients in the notice and serving that notice on themselves, who by the terms of the loan receipt had full control over the litigation. None of the defendants have perceived it to be in their interest to raise a jurisdictional issue, and we do not believe any public policy or juridical policy would be served by a dismissal. The situation is within the sense

---

[5] The notice of appeal contained both a designation of record encompassing "all testimony, exhibits and transcript of proceedings relating to the entry of the judgment from which this appeal is taken" and a statement of points on appeal. The latter seems to be surplusage under ORS 19.029(1)(e).

[6] Including Conn Organ and the Rifes, who settled with the insurer and stipulated to a judgment which by its terms evidenced an intention to dispose of the whole controversy with the insurer and the church.

of the pronouncement in *Banfield v. Schulderman*, 137 Or 256, 260, 299 P 323; 3 P2d 116 (1931):

"As to the second ground [for dismissal of the appeal], that no notice was served upon the executor, we hold that where, as in this case, the appellant is the executor and throughout the litigation in the circuit court and this court the same attorney represents the appellant as an individual and as the executor, and the order from which this appeal is prosecuted, among other things, requires appellant as executor to account for assets becoming such because of a claim due the estate from him as an individual, the service of the notice of appeal by the individual upon himself as executor would be a vain and idle gesture; hence, the failure in this case to make such service constitutes no ground for dismissal of the appeal."

Having concluded that the insurer may maintain this appeal, we also conclude that the issue of the validity of the order of abatement may be raised by the insurer. ORS 19.140 provides in relevant part:

"Upon an appeal, the appellate court may review any intermediate order involving the merits or necessarily affecting the judgment or decree appealed from; and when it reverses or modifies such judgment * * * may direct complete restitution of * * * rights lost thereby."

As will appear, the order sustaining the pleas in abatement was erroneous as a matter of law, and there can be no question that it affected the final judgment in the case. It deprived the insurer of its right to have the action maintained in the name of the church, and we are obligated to protect that right in this appeal.

Loan receipts are recognized in Oregon as a proper means of preserving title to a cause of action in the insured party. *Waterway Terminals v. P.S. Lord*, 242 Or 1, 406 P2d 556 (1965); *Lamb-Weston v. Ore. Auto. Ins. Co.*, 219 Or 110, 341 P2d 110, 346 P2d 643 (1959); *Furrer v. Yew Creek Logging Co.*, 206 Or 382, 292 P2d 499 (1956).

In *Furrer*, which was the first case on the subject, the court stated:

"[T]here is nothing inherently wrong with the use of a loan receipt * * *. [W]here * * * the loan receipt is given with the intention that the money received under it shall be a loan and not a payment, such an intention should be given effect. And it would seem that the giving of the receipt, containing recitals such as the one here involved,[7] is strong evidence of the true intention of the parties that there has been no payment and that title to the cause of action therefore did not pass from plaintiff to his insurer.

"The insurer may have an action against defendant only if it makes an outright payment to plaintiff and becomes thereby subrogated to plaintiff's rights. *Salzwedel v. Pinkley*, 140 Or 671, 15 P2d 718; *Olds v. Von der Hellen et al.*, 127 Or 276, 263 P 907, 270 P 497; *Home Mutual Ins. Co. v. O.R.& N. Co.*, 20 Or 569, 26 P 857. If the insurer prefers to forego that right and to substitute for it a contract right against plaintiff, defendant need have no fear of an action by the insurer, for it will have none. The insurer cannot make a loan and claim to be subrogated, and unless it can show a right by subrogation it cannot harass defendant by an action on the claim.

"Of course, defendant is entitled to assurance that it will be required to defend against this claim only once, and that payment to plaintiff will, as to it, finally settle the matter. However, this is the extent of the interest which defendant may have in any agreement of this kind, made, as it is, between two other parties who are free to contract in any lawful manner concerning their business. If plaintiff chooses to take something less than the absolute payment to which he is entitled under this policy, that is his affair, and defendant's only proper concern is that payment to plaintiff is the only one which will be required of it.

"The reason why these parties chose to adopt this arrangement is immaterial so far as defendant is concerned, for he is properly concerned with only one

---

[7] The recitals in the loan receipt in *Furrer* were essentially the same as those included in this case.

effect of it—the location of the title to the cause of action.

"Indeed it would be difficult for the insurer to claim that it could bring this action after it has procured a document such as this. The entire tenor of the loan receipt shows that the insurer intended that the title to the claim should remain in plaintiff. To be sure, the insurer will have some interest in the fund recovered, but the interest will come not from a subrogation because of a payment it has made, but from the agreement which it has entered into with plaintiff." 206 Or at 388-89.

In *Lamb-Weston*, the court upheld a loan receipt arrangement with the following discussion:

"It is also argued, the loan receipt was a 'sham and subterfuge.' Oregon, however, recognizes these transactions as entirely legal and effective depending upon the intention of the parties. * * * Here there is no evidence of intention other than as expressed in the instrument itself. We conclude a valid borrower-lender arrangement was intended and effected." 219 Or at 116.

In *Condor Investment Co. v. Pacific Coca-Cola Bottling Co.*, 211 F Supp 671 (D Or 1962), the United States District Court, in holding a loan receipt arrangement ineffective, applied the language of *Furrer* and *Lamb-Weston* which refers to the intention of the parties. The court emphasized various aspects of the transaction between insurer and insured, including that the drafts which were issued to and endorsed by the insured were specifically based on a particular proof of loss under a specific policy and recited that they were in full and complete settlement of the loss. The court noted that

"[t]he parties, with few exceptions, treated the transactions as the settlement of ordinary claims under fire insurance policies." 211 F Supp at 675.

In *Waterway Terminals, supra,* the court cited *Furrer* and *Lamb-Weston* in upholding a loan receipt.

[795]

The court also discussed the *Condor Investment* opinion:

"An able opinion by United States District Judge John F. Kilkenny in *Condor Investment Co. v. Pacific Coca-Cola Bottling Co.*, 211 F Supp 671 (D Or. 1961) has been pressed upon us. The court there held that our decisions on the question were not applicable to the case before it for the reason, among others, that the drafts issued by the insurance company purported on their face to be in full payment of the loss. *That is true here, but we think that the language of the loan receipts clearly expressing the intention of the plaintiff and insurance companies to treat the payments as loans is controlling.* Recitals in the documents show that the parties relied on the *Furrer* case in entering into the agreements. The rule of *stare decisis* requires that there should be no departure from our former decisions.

"Contrary to the contention of the defendants, we think the evidence presented no jury question and the court rightly determined the question as a matter of law." 242 Or at 8 (Emphasis supplied.)

Defendants argue that our review is limited to determining if there was evidence to support a finding by the trial court that the parties' intention was contrary to that expressed in the loan receipts. They point out that the church executed a release, that the insurer's representative stated in a letter to the insurer prior to execution of the loan receipts that the "loss [has been] concluded," that the minister of the church was told it was not necessary to sign the loan receipts in order to receive payment and that on inquiry the minister was told the church was not getting a loan.

█ Although *Lamb-Weston*, standing alone, could be taken as indicating the contrary, the existence of evidence that the transaction was not intended from the outset to be a loan or was not consistently treated as such is not conclusive. In *Waterway Terminals* there was such evidence, but the court held as a matter of law the loan receipt was controlling. We do not

[796]

think this case can be meaningfully distinguished. Once the Supreme Court was persuaded to accept the *form* of a loan receipt as being the *substance* of the transaction, it had entered upon a course of logic that led inevitably to the *Waterway Terminals* conclusion. We are bound by that.

■ Defendants rely primarily on the execution of the release, but the endorsement by the insured in *Waterway Terminals* of drafts purporting to be in full payment of the loss was the equivalent of the release in this case. In the face of the clear and unequivocal loan receipts, the statement that the church was not getting a loan must be taken as an assurance that the church would not be required unconditionally to repay. We know of no reason that the parties to the loan receipt were not bound by it. It is not significant that the loan receipts were executed after the $15,000 payment; that payment was included in the total amount of the receipts, which, by their terms, evidenced the nature of payments already made.

In response to the pleas in abatement, the church stood on the loan agreements. The insurer has made its reliance on the loan receipts clear throughout. Defendants' limited interest in the transaction is therefore protected. *Furrer v. Yew Creek Logging Co., supra.* Under *Waterway Terminals*, the loan receipts are controlling.

The judgments against the insurer are reversed and the cause remanded to the trial court. ORS 19.130(1) provides:

> "Upon an appeal, the court to which the appeal is made may affirm, reverse or modify the judgment or part thereof appealed from as to any or all of the parties joining in the appeal, and may include in such decision any or all of the parties not joining in the appeal, except * * * and may, if necessary and proper order a new trial."

On remand, if the church moves to reinstate its second amended complaint, the trial court is directed to allow

[797]

the motion in order to achieve the restitution of rights as commanded by ORS 19.140.

Reversed and remanded with instructions.